Argued and submitted February 9, decision of Court of Appeals affirmed in part and reversed in part; judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings June 25, 2009

# STATE OF OREGON,
## *Respondent on Review,*

*v.*

# STEVEN DONALD PARKINS,
## *Petitioner on Review.*

## (CC CR0500337; CA A130219; SC S056356)

211 P3d 262

Daniel J. Casey, Portland, argued the cause and filed the briefs for petitioner on review.

Paul L. Smith, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

LINDER, J.

Kistler, J., dissented in part and concurred in part and filed an opinion.

## LINDER, J.

In this criminal case, defendant was convicted of, among others charges, one count of first-degree kidnapping and six counts of first-degree sexual abuse. On appeal to the Court of Appeals, defendant raised several challenges to his convictions and sentences. The Court of Appeals affirmed without opinion. *State v. Parkins*, 220 Or App 314, 185 P3d 1132 (2008). We allowed defendant's petition for review, which raises two of the issues that defendant presented to the Court of Appeals. First, defendant contends that his kidnapping conviction should be overturned because the evidence failed to show that the victim was "secretly confine[d] * * * in a place where [she was] not likely to be found." ORS 163.225(1)(b).[1] Second, defendant contends that the trial court should have merged his separate convictions for first-degree sexual abuse because the six separate counts of the indictment represented different legal theories for proving three acts of sexual abuse. For the reasons we set forth below, we agree with both of defendant's arguments. We therefore reverse the Court of Appeals decision and remand the case to the trial court for further proceedings.

Because this appeal arises in part from the trial court's denial of defendant's motion for judgment of acquittal, we state the facts underlying defendant's conviction in the light most favorable to the state. *State v. Casey*, 346 Or 54, 56, 203 P3d 202 (2009). The incidents alleged in the indictment took place during the summer of 2003. The victim, who was 11 years old, lived with her mother, Furlow, and her older sister, in her mother's home. Defendant was a friend of Furlow's then-boyfriend, Olney, and visited the mother's home that summer.

One day during that summer, Furlow and Olney left defendant alone at the house with the victim and her older

---

[1] ORS 163.225(1) provides, in part:

"A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"* * * * *

"(b) Secretly confines the person in a place where the person is not likely to be found."

sister. The victim's sister was on the porch smoking a ciga-rette, and defendant was in Furlow's bedroom. The victim asked her sister where she had gotten the cigarette, and her sister replied that defendant gave it to her. The victim then walked down the hall and passed by her mother's bedroom. Defendant offered the victim a cigarette. The victim went into the bedroom and grabbed a cigarette from the headboard of the bed. When the victim turned around to ask for a lighter, defendant shut and locked the bedroom door. Defen-dant pushed her onto the bed, climbed on top of her, and held her down by putting his knees on her shoulder. Defendant kissed the victim. When the victim screamed, defendant struck her in the face and threatened to burn her with his cig-arette. Defendant put his hands under the victim's shirt and touched her breasts. At another point, he put his hand down the victim's pants and inserted his fingers into her vagina. Defendant also touched victim's buttocks. The victim tried to scream and to move, but defendant told her "to stop scream-ing because no one would hear [her] and no one would care." At some point, the victim's sister rattled the doorknob to the locked bedroom. Defendant let the victim up, and she unlocked the door and ran out of the room.

Based on those events, defendant was indicted in 2005 for one count of first-degree unlawful sexual penetra-tion, one count of second-degree unlawful sexual penetration, six counts of first-degree sexual abuse, and one count of first-degree kidnapping. After a bench trial, the court found defen-dant guilty on all counts. The trial court sentenced defendant to 100 months' imprisonment for first-degree unlawful sexual penetration, 75 months' imprisonment for second-degree unlawful sexual penetration, 75 months' imprisonment for each count of first-degree sexual abuse, and 90 months' imprisonment for first-degree kidnapping, with all sentences to be served concurrently.

As noted, defendant appealed to the Court of Appeals, which affirmed without opinion. Defendant then petitioned for review, raising two issues: (1) whether a person is "secretly confine[d] * * * in a place where the person is not likely to be found," as required for the kidnapping charge (ORS 163.225(1)(b)), when another person knew where the

victim was located; and (2) whether defendant's six convictions for first-degree sexual abuse should have been merged into three convictions, when those convictions were based on different legal theories for proving three acts of sexual abuse. We address each issue in turn.

In considering the legal sufficiency of the evidence on the first-degree kidnapping charge, we first address the state's contention that defendant did not preserve his challenge to the first-degree kidnapping charge. At the close of the state's case, apparently anticipating that defendant would move for a judgment of acquittal, the state alerted the trial court to the Court of Appeals opinion in *State v. Montgomery*, 50 Or App 381, 386-87, 624 P2d 151 (1981). In doing so, the state described *Montgomery* as "an important case with regard to the kidnapping charge," because that opinion analyzed the "secretly confined" and "place not likely to be found" elements of ORS 163.225(1)(b). After the state called the court's attention to *Montgomery*, the trial court recessed briefly. When the proceedings resumed, defendant moved for a judgment of acquittal.

In moving for a judgment of acquittal, defendant discussed *Montgomery* and attempted to distinguish that case:

"I know [the state] referred, before the break, to *State v. Montgomery*, which is a case regarding a person being secreted. And although I would factually distinguish the present case from the *Montgomery* case in that the individual that this took place—that the individual who did secret or attempt to secret or hold [the victim], did not follow the dictates set out I think in *Montgomery* in that there wasn't any attempt to secret her in the sense of when somebody rattled the door, people exited the room apparently. There were other people—at least one other person, no matter what version you believe, in the trailer, which was certainly by all accounts not difficult to hear throughout, and the sister, being the only one there, her being present in the trailer or at the furthest, present on the porch, which in some respects may even be closer to physically to the room that [the victim] claims this took place in, was certainly within ear shot, and any cry would have been heard and could have been heard, seems to defeat the secreting aspect that is referred to in *Montgomery*."

Immediately after that statement, defendant continued, "However, as the Court knows from the entire case from opening statement to now, *that's not our issue. Our issue is not a nit-picking argument regarding specific elements and specific crimes.*" (Emphasis added.) Defendant explained that he was "simply saying that there's insufficient evidence, as a whole" to conclude that defendant committed any criminal acts as charged. That was consistent with defendant's overall theory of the case, which was that the abuse either had not occurred at all or that the perpetrator had been someone else who sometimes visited the family, and who better matched the victim's description of the perpetrator. The trial court thereafter denied defendant's motion for judgment of acquittal. In doing so, the trial court specifically stated:

> "I do believe that there's sufficient evidence on the Kidnapping count to support the allegations set forth in the Indictment, particularly the evidence that was brought up by the State, that there were attempts by [the victim] to seek help and to scream, but that the Defendant told her that nobody would hear and nobody would care. And, in light of that evidence, I believe *that that charge is legally sound in this case.*"

(Emphasis added.)

In arguing that defendant did not preserve the argument that he now makes, the state points to defendant's statements after his discussion of *Montgomery* and asserts that those statements steered the trial court away from the legal issue of whether the alleged conduct constituted "secret confine[ment] * * * in a place where the person is not likely to be found," as that phrase is used in ORS 163.225(1)(b). According to the state, defendant urged the trial court to focus instead on whether there was sufficient evidence to establish that any crime occurred and, if one had occurred, whether defendant was the person who had committed it. In the state's view, the trial court did not have an adequate opportunity to consider the argument that defendant now presses.

The general rule is that claims of error that have not been raised in the trial court will not be considered on appeal. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000); ORAP 5.45.

"The purpose of the preservation rule is the practical one of requiring a defendant to provide an explanation of his or her position 'specific enough to ensure that the [trial] court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.' "

*State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004) (quoting *Wyatt*, 331 Or at 343).

The state relies on *State v. Chavez*, 335 Or 44, 48, 56 P3d 923 (2002), as a case arising on analogous facts in which this court held that defendant had failed to preserve the issue that he sought to have this court resolve. In *Chavez*, the defendant argued on appeal that the Vienna Convention on Consular Relations (VCCR) required the trial court to suppress his incriminating statements to the police. *Id.* at 46-47. The defendant had made that argument to the trial court in a written memorandum in support of a motion to suppress. *Id.* at 47. At the hearing on the motion, the trial court stated that it agreed with the state's position that the VCCR did not create individual rights, but told the defendant's lawyer that he could attempt to convince the court otherwise. *Id.* The defendant's counsel declined the invitation and, instead, orally argued only that the defendant's statements should be suppressed under *Miranda*, which he thought posed the same considerations as did compliance with the VCCR. *Id.* This court held that the defendant's argument for suppression under the VCCR was not preserved because the defendant "expressly told the trial court that he was not trying to argue that the VCCR created individual rights beyond those that *Miranda* confers" and "affirmatively asked the trial court not to consider the argument that he seeks to advance in this court." *Id.* at 48. The state contends that, as in *Chavez*, defendant here directed the trial court away from the issue that he presses on appeal and, therefore, did not preserve the argument.

We disagree that *Chavez* and this case bear sufficient similarities to compel the same conclusion that the court reached in *Chavez*. To be sure, defendant in this case did not offer the trial court a lengthy and detailed argument about why the state's evidence did not satisfy the element of "secretly confin[ing] the person in a place where the person is

not likely to be found," ORS 163.225(1)(b). Unlike the defendant in *Chavez*, however, defendant in this case actually did discuss relevant precedent (*Montgomery*) and did present some argument to the trial court as to how his case differed from that precedent. Defendant's subsequent statement to the court, "that's not our issue," could have been a segué to a different argument, as defendant now urges. It also could have been, as the state urges, an abandonment of any *Montgomery*-type challenge to the kidnapping charge. We can conceive of a third possibility as well: Defendant may have been confident of his likely success on his theory that, because he did not match the victim's description of the person who had abused her, the evidence was insufficient to prove that defendant had committed any criminal acts. Success on that point would have resulted in an acquittal on all charges, not just on the kidnapping charge. Defendant may have cast his argument as he did to convey the strength of that confidence to the trial court. In all events, the trial court, in our view, appears to have understood the *Montgomery* issue to be in play. In denying the motion for judgment of acquittal, the court specifically stated that the kidnapping charge "is legally sound in this case" and highlighted, not the evidence of defendant's identity as the perpetrator, but the evidence that satisfied the confinement element of the crime.

■■    This court recently reaffirmed the important policies behind the preservation rule—*e.g.*, procedural fairness to the parties and the trial court, judicial economy, and full development of the record. *See Peeples v. Lampert*, 345 Or 209, 219-21, 191 P3d 637 (2008) (discussing and reaffirming the importance of the preservation rule). But the preservation rule also can come at a cost. It may prevent a reviewing court from correcting prejudicial error, at least when the error is not one that the court can reach as error apparent on the face of the record (so-called "plain error"). *See State v. Steen*, 346 Or 143, 145, 206 P3d 614 (2009) (discussing plain error exception to preservation requirement generally); ORAP 5.45(1) (appellate courts will not consider unpreserved issues unless they qualify as errors apparent on the record). The preservation rule also may inhibit needed development or clarification of the law. Consequently, as this court has cautioned, "problems may arise if the preservation onion is sliced

too thinly." *Amaya*, 336 Or at 629. Ultimately, the preservation rule is a practical one, and close calls—like this one—inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served.

Here, those policies are sufficiently served. The statutory issue that defendant raises was presented to the trial court, even if defendant addressed it ambivalently. And not only did the state have a meaningful opportunity to address the issue, it was the state that raised *Montgomery* before the trial court. Finally, the trial court had an opportunity to resolve the issue, and the record suggests that the trial court in fact did so. To be sure, the issue could have been better preserved, but it was, we conclude, adequately preserved.

■        We therefore turn to the merits of defendant's kidnapping argument. Defendant was convicted of first-degree kidnapping. ORS 163.235(1) defines that crime:

> "A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:
>
> "(a)   To compel any person to pay or deliver money or property as ransom;
>
> "(b)   To hold the victim as a shield or hostage;
>
> "(c)   To cause physical injury to the victim; or
>
> "(d)   To terrorize the victim or another person."

ORS 163.225(1) provides, in part:

> "A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:
>
> "* * * * *
>
> "(b)   Secretly confines the person in a place where the person is not likely to be found."

As noted, defendant focuses his argument on the meaning of the phrase "secretly confines the person in a place where the person is not likely to be found." ORS 163.225(1)(b).

■■ In interpreting statutes, the appropriate first step in determining the legislature's intent is to examine the statutory text and context. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). ORS 163.225(1)(b) does not define the phrase at issue. We therefore look to the "plain, natural, and ordinary meaning" of that phrase. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). "Secretly confine[d] * * * in a place where the person is not likely to be found," ORS 163.225(1)(b), means that a person is held or restrained in a place where it is not probable that the person will be located, either accidentally or through searching. Both the words and their meaning are straightforward.[2]

Because this court has no cases applying that phrase from ORS 163.225(1)(b), both parties discuss the sole Court of Appeals decision on this issue, *Montgomery*, 50 Or App at 386-87. In that case, the court analyzed both whether the victim had been "secretly confine[d]" and whether the confinement had been in a "place where the person is not likely to be found." *Id.* The defendant and his brother had dragged the victim into the victim's bedroom. *Id.* at 383. When the police arrived at the victim's apartment, the defendant and his brother pulled the victim into the bathroom, where defendant held a knife to the victim's throat while the defendant's brother went to speak with the police. *Id.* The defendant's brother told the defendant to cut the victim's throat if the victim made a sound. *Id.*

The Court of Appeals had little difficulty concluding that the victim in *Montgomery* had been "secretly confine[d]":

"Defendant clearly confined the victim by keeping him in the bathroom. And, using the ordinary definition of

---

[2] We generally resort to dictionary definitions for the common meaning given to statutory terms. *See State v. Murray*, 340 Or 599, 604, 136 P3d 10 (2006) (so observing). For particularly straightforward terms—like the statutory terms at issue in this case—dictionary definitions tend to offer us little more than equally straightforward synonyms. "Confine," for example, means, among other things, "to hold within bounds" and "to keep in narrow quarters." *Webster's Third New Int'l Dictionary* 476 (unabridged ed 2002). Here, the key words in the phrase at issue are "secretly," "likely," and "found." The dictionary defines "secret" as "kept from knowledge or view" and "concealed." *Id.* at 2052. "Likely" means probable or "having a better chance of existing or occurring than not." *Id.* at 1310. "Found" is the past tense of "find," which means "to come upon accidentally" and "to come upon * * * by searching or effort." *Id.* at 851.

'secretly' as keeping something from knowledge or view, defendant and his brother made the place secret by locking the door, closing the curtains, holding the victim at knife-point so that he was not able to respond to the officer's knocks, and telling the officers that the victim was not at home."

*Id.* at 386. The "place where the person is not likely to be found" component of the kidnapping charge gave the court more trouble, but the court ultimately concluded that, under the circumstances of the case, the bathroom in the victim's own apartment was such a place:

"[A]lthough a victim's own bathroom is not ordinarily a place where that person is not likely to be found, the room can be made into such a place by the efforts of the kidnapper. Here, defendant and his brother made a calculated effort to insure that the police would not find the victim in his own apartment and they succeeded. Under these circumstances the jury was entitled to find that defendant confined the victim in a place where he was not likely to be found."

*Id.* at 386-87.

The facts in *Montgomery* are not before us, and our task is not to decide that case. We do agree with the Court of Appeals, however, that determining whether a person was secretly confined in a place where the person is not likely to be found must take into account the circumstances of the place, the victim, and the defendant's actions. Here, it is beyond dispute that the victim was confined in her mother's bedroom—defendant locked the door to the bedroom, pinned the victim on the bed, and threatened to burn her with a cigarette if she continued to scream. From those same actions, a trier of fact could find that defendant "secretly" confined the victim—defendant concealed the victim's confinement by taking steps to ensure that the victim not reveal that she was locked in the bedroom with defendant.

No reasonable finder of fact could conclude, however, that the confinement was in a place where the victim was not likely to be found. The victim's older sister was on the porch of the home at the time of the incident. Her sister suggested

that the victim go to their mother's bedroom and ask defendant for a cigarette, and the victim left the porch and went inside in response to that suggestion. The sister thus either knew that the victim had gone to their mother's bedroom, or at least would have thought that she had done so. That fact is confirmed by the sister's actions. When the sister entered the house to look for the victim, she went to the door into her mother's bedroom and jiggled the door handle. Because the sister thought that the victim had gone to her mother's bedroom to see defendant, it also was probable, and thus *likely*, that the sister would have found the victim through searching.[3] Under the circumstances of this case, therefore, defendant cannot be said to have secretly confined the victim in a place where she was "not likely to be found," within the meaning of ORS 163.225(1)(b).[4] We therefore must reverse defendant's conviction for first-degree kidnapping.

■ We turn to the second issue raised by defendant. Defendant contends that the trial court erred in not merging his six sexual abuse convictions into three convictions. Before we proceed to the merits of defendant's merger argument, however, we again must address the state's contention that this issue was not properly preserved in the trial court.

Defendant filed a sentencing memorandum in the trial court that cited the anti-merger statute, ORS 161.067:

"Defendant has recorded his objection to any sentence imposed under ORS 137.700. If the court does sentence the defendant under that sentencing scheme[,] the court's power to impose sentences consecutive to one another is limited. ORS 161.067; [State] v. McCloud, 177 Or App 511 (2001). These references *apply specifically to the issue of merger. Clearly defendant's convictions for sexual abuse in*

---

[3] The state contends that the sister's presence should not affect the analysis because she was outside on the porch smoking a cigarette and she also had been drinking on the day in question. There is no evidence, however, that either fact prevented the sister from knowing the victim's location.

[4] We emphasize that our decision is limited to the particular factual circumstances of *this* case. We do not hold here that a room in one's own home can never be a "place where the person is not likely to be found" when another person is present in the home for purposes of ORS 163.225(1)(b). Neither do we hold that secret confinement in a "place * * * not likely to be found" cannot include places where the victim is actually—if accidently—found.

*the present case should be merged for purposes of conviction.*"[5]

(Emphasis added.) In that memorandum, defendant also stated that, "[i]n the present situation[,] the court has found the defendant guilty of charges that are not separately punishable offences [*sic*] under ORS 161.067." Defendant's sentencing memorandum discussed both merger of the counts on which defendant had been found guilty as well as consecutive sentencing and appeared at times to conflate those concepts.

At the sentencing hearing, defendant again raised ORS 161.067 and *McCloud*. There, the context was an argument concerning consecutive sentencing:

"In addition, Your Honor, [*State v. McCloud*], which I referred to in the memorandum, as well [as ORS 161.067] seems they set out that the Court would have to make certain findings in any consecutive sentencing, especially as the Court pointed out, that this was a single incident, short time span, not allowing the Defendant to pause, I think is one of the words used in the case law for purposes of contemplation further that the harm caused by the Defendant was greater than the qualitative different loss to the victim in similar cases.

"I think that—I think that given the background of [defendant]—uh—that consecutive sentences in this case would be overkill, quite frankly."

The state discussed ORS 161.067 in greater detail than did defendant, although the state similarly focused primarily on the consecutive sentencing issue:

"[ORS] 161.067 talks about determining punishable offenses for violation of multiple statutory provisions and/or multiple victims or repeated violations. Subsection 1 is the one that applies in this case. It says when the same conduct or criminal episode violates two or more statutory provisions, and each provision requires proof of an element

---

[5] In *State v. McCloud*, 177 Or App 511, 34 P3d 699 (2001), *vac'd*, 334 Or 491, 52 P3d 1056 (2002), the Court of Appeals analyzed the difference between the merger of a defendant's convictions and whether the sentences for those convictions should be served concurrently or consecutively.

that the others do not, there are as many separately punishable offenses as there [are] separate statutory violations. And we have that in this case. *And that's why you can issue consecutive sentences if you'd like*."[6]

(Emphasis added.) The trial court's ruling at the sentencing hearing did not address merger. Instead, the trial court sentenced defendant to 100 months on the first-degree unlawful sexual penetration count and ordered that the sentence for all remaining counts run concurrently to that sentence.

In arguing that the merger issue is not adequately preserved, the state urges that the trial court did not have the opportunity to address the merger issue that defendant raises on appeal. The state acknowledges that defendant cited the relevant statute (ORS 161.067) and a relevant case (*McCloud*) both in his sentencing memorandum and at the hearing. The state asserts, however, that defendant's sentencing memorandum was ambiguous and that defendant's statements at the hearing, which omitted any discussion of merger, led the trial court to conclude that defendant's argument focused only on concurrent sentencing. Consequently, according to the state, defendant's citation of those sources was not enough to preserve the specific claim of error that defendant seeks to raise on appeal.

As was true of the preservation issue on the kidnapping charge, the preservation of the merger issue is a close one. But, we again conclude that the issue was adequately preserved. Defendant discussed the relevant statute and a relevant decision, both in his sentencing memorandum and at the sentencing hearing. In his sentencing memorandum, defendant stated, "Clearly defendant's convictions for sexual abuse in the present case should be merged for purposes of conviction." Although his argument at the hearing was not as explicit—he appeared to conflate the issues of merger and of consecutive sentences—he did not abandon or withdraw the issue. The state mentioned merger, and both the state and

---

[6] Additionally, earlier in the sentencing hearing, the prosecutor summarized, "As you know, there are nine counts in the Indictment, and the Defendant was found guilty of all nine counts, and they're all Ballot Measure 11 Counts. *I believe that none of the charges legally merge for sentencing purposes.* They're all separate convictions." (Emphasis added.)

defendant discussed the relevant statute and decision. The state had an opportunity to meet defendant's merger argument, and the trial court had an opportunity to decide the issue. In short, the issue appears to have been sufficiently well preserved to serve the policies that underlie the preservation requirement.

We therefore move on to address the merits of defendant's argument that the trial court should have merged his sexual abuse convictions. Defendant was charged with and convicted of six counts of sexual abuse in the first degree. ORS 163.427 defines first-degree sexual abuse:

"(1)   A person commits the crime of sexual abuse in the first degree when that person:

"(a)   Subjects another person to sexual contact and:

"(A)   The victim is less than 14 years of age;

"(B)   The victim is subjected to forcible compulsion by the actor; or

"(C)   The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless; or

"(b)   Intentionally causes a person under 18 years of age to touch or contact the mouth, anus or sex organs of an animal for the purpose of arousing or gratifying the sexual desire of a person.

"(2)   Sexual abuse in the first degree is a Class B felony."

"Sexual contact," for purposes of first-degree sexual abuse, is defined as

"any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party."

ORS 163.305(6).

In defendant's case, the six charges of first-degree abuse were based on three acts of sexual contact. Specifically, counts three and four both alleged sexual contact by touching the victim's breast; counts five and six alleged sexual contact

by touching the victim's vagina; and counts seven and eight alleged sexual contact by touching the victim's buttocks. Although there was only a single act of touching as to each prohibited body part, the conduct resulted in two charges per act, because, for each pair of counts, the victim was alleged to have been under the age of 14 years and the sexual contact was alleged to have been committed using forcible compulsion.

In arguing that the guilty verdicts on each of the paired counts should merge into a single guilty verdict, defendant relies on the so-called "anti-merger" statute, ORS 161.067(1), which provides:

> "When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

Under that statute, for a single criminal act or criminal episode to give rise to more than one statutory violation, three requirements must be satisfied: (1) defendant must have engaged in acts that are "the same criminal conduct or episode"; (2) defendant's acts must have violated two or more "statutory provisions"; and (3) each "statutory provision" must require "proof of an element that the others do not." *State v. Crotsley*, 308 Or 272, 278, 779 P2d 600 (1989) (quoting *former* ORS 161.062(1) (1985)), the nearly identical precursor to ORS 161.067(1)). In this case, neither the first nor the third requirements are in dispute. That is, the parties agree that each set of charges involved the same conduct or criminal episode. They also agree that each charge required proof of an element that the paired charge did not. They disagree only on whether defendant's conduct violated two or more "statutory provisions."

To resolve that issue, we begin with our recent decision in *State v. White*, 346 Or 275, 211 P3d 248 (2009), in which we synthesized this court's prior merger cases discussing the phrase "statutory provisions" and analyzed how that phrase applied to multiple convictions of second-degree robbery. The analysis in *White* is particularly instructive in this case.

In *White*, this court reaffirmed that, to determine whether a single act violates two or more "statutory provisions," a court must determine whether the legislature intended to create a single crime or two or more crimes. *White*, 346 Or at 280 (citing cases). That inquiry does not depend—at least not entirely—on the structural form that a criminal statute takes, although the use of a single section is one indication that the legislature intended to define a single crime. *Id.* (citing *State v. Barrett*, 331 Or 27, 35, 10 P3d 901 (2000)). Neither does the inquiry turn entirely on whether two or more charges are based on one or more statutes that address "separate and distinct legislative concerns." *Id.* at 283. That is so because, as this court observed in *White*, "every statutory section that 'requires proof of an element that the others do not,' ORS 161.067(1), necessarily involves a distinct legislative concern—otherwise there would be no need for the additional element." *Id.* This court therefore clarified in *White*:

> "[W]e view the statute as a whole, looking to the text, context, and, when appropriate, legislative history of the statute. That analysis includes consideration of whether the sections, although addressing different concerns, also may address, on a more general level, one unified objective."

*Id.* at 283-84.

In applying that analysis, *White* began with the statute defining second-degree robbery and its context more generally. As the court in *White* explained, second-degree robbery is set out in a single statutory section and is part of a scheme that incrementally grades robbery into three levels of crimes—third-degree robbery, second-degree robbery, and first-degree robbery. *See White*, 346 Or at 284 n 9, 285 nn 10, 11 (quoting text of pertinent statutes). The base crime is third-degree robbery. *Id.* at 285. Second- and first-degree robbery consist of committing the base crime (third-degree robbery) under any of several circumstances that elevate the crime to one of the higher degrees. *Id.* at 285-86. For both second- and first-degree robbery, the elevating elements are set out in separate paragraphs in the statutory section that defines that degree of the crime. *Id.* at 284 n 9, 286 n 12. For second-degree robbery, the elevating elements are either that

the robber represents that he or she is armed with something that purports to be a dangerous or deadly weapon (ORS 164.405(1)(a)) or the robber is aided by another person actually present (ORS 164.405(1)(b)).

*White* observed that the fact that the elevating elements were set out in different paragraphs of the single section defining the single crime of second-degree robbery was at least a possible indication that the legislature intended to define two separate crimes—*i.e.*, robbery when aided with a person actually present, and robbery when armed with something that purports to be a weapon. *Id.* at 286-87. On the other hand, the fact that the two crimes were given the single designation of robbery in the second degree, and were set out in a single section of the criminal code, suggested the opposite—that is, it suggested that the legislature intended to describe only the single crime of robbery in the second degree, with multiple ways that the crime could be elevated from third-degree to second-degree robbery. *Id.* at 286-87. To determine which understanding was correct, the court turned to legislative history. *Id.* at 287. The court concluded that the robbery statutes represented an incremental scheme in which the elements that enhanced third-degree robbery to higher degrees of robbery reflected a common legislative concern (the potential for violence). *Id.* at 287-88. As a result, the court also concluded that the enhancing elements for committing second-degree reflected the legislature's intent to define a single crime of second-degree robbery, not several separate crimes. *Id.* at 290-91.

The first-degree sexual abuse statute at issue here is part of an incrementally graded scheme that is analogous to the robbery statutes in *White*. ORS 163.427, by its terms, defines a single crime—first-degree sexual abuse. Subsection (1) of ORS 163.427 lists four ways in which a person may commit the crime of sexual abuse in the first degree. The first paragraph, ORS 163.427(1)(a), lists three alternatives in three subparagraphs: (A) the defendant uses forcible compulsion to have sexual contact with the victim; (B) the defendant has sexual contact with a victim who is less than 14 years of age; or (C) the defendant has sexual contact with a victim who is incapable of consent. The fact that the legislature included three alternative elements for first-degree sexual

abuse in paragraph (a) of that one section indicates that the legislature intended to define one single crime. But, the legislature's decision to list those different elements in separate subparagraphs at least clouds somewhat the legislative intent that can be discerned from the structure of the statute. As in *White*, we therefore look to the legislative history for guidance.

In 1970, the Criminal Law Revision Commission proposed two statutory sections that defined two degrees of sexual abuse. First-degree sexual abuse was defined as follows:

"(1)   A person commits the crime of sexual abuse in the first degree when he subjects another person to sexual contact; and

"(a)   The victim is less than 12 years of age; or

"(b)   The victim is subjected to forcible compulsion by the actor."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code § 116(1), 122 (July 1970). The proposed statute governing second-degree sexual abuse provided, in part:

"(1)   A person commits the crime of sexual abuse in the second degree if he subjects another person to sexual contact; and

"(a)   The victim does not consent to the sexual contact; or

"(b)   The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless."

*Id.* § 115(1), 121. The legislature codified those sections as ORS 163.435 (first-degree sexual abuse) and ORS 163.415 (second-degree sexual abuse) in 1971.[7]

---

[7] The legislature amended sexual abuse statutes in 1991. Or Laws 1991, ch 830. First-degree sexual abuse was renumbered to ORS 163.427. Third-degree sexual abuse was added to the statutes. Second-degree sexual abuse is now set forth in ORS 163.425:

"(1) A person commits the crime of sexual abuse in the second degree when that person subjects another person to sexual intercourse, deviate sexual intercourse or, except as provided in ORS 163.412, penetration of the vagina,

The Commission described the proposed statutes:

> "The offense of sexual abuse is divided into two ascending degrees. Section 115 defines the basic offense. * * *
>
> "The offense is raised a degree if either of the following factors is present: (1) The victim is under 12 years of age; or (2) The victim was subjected to forcible compulsion by the actor."

Criminal Law Revision Commission Commentary at 122-23. That description indicates that the Commission intended to create a basic offense—second-degree sexual abuse—and that the basic offense could be raised to first-degree sexual abuse if either of two facts were present. The "basic offense" of second-degree sexual abuse, as proposed by the Commission, occurs in either of two circumstances: sexual contact without consent or sexual contact with a person incapable of consent. That basic offense is elevated to first-degree sexual abuse in two parallel circumstances: sexual contact through forcible compulsion and sexual contact with a person under 12 years of age.

The offense of sexual abuse as proposed and described by the Commission is thus similar to the robbery statutes at issue in *White* (*i.e.*, the degree of the robbery increases with an increase in the potential for violence, and each degree sets out multiple ways in which that increased potential for violence is present). The offense of sexual abuse is also similar to this court's description of the aggravated murder statute in *State v. Barrett*, 331 Or 27, 36, 10 P3d 901 (2000):

> "The wording of the statute that we just have reviewed shows that the harm that the legislature intended to

---

anus or penis with any object other than the penis or mouth of the actor and the victim does not consent thereto.

"(2) Sexual abuse in the second degree is a Class C felony."

Third-degree sexual abuse is now defined in ORS 163.415:

"(1) A person commits the crime of sexual abuse in the third degree if the person subjects another person to sexual contact and:

"(a) The victim does not consent to the sexual contact; or

"(b) The victim is incapable of consent by reason of being under 18 years of age.

"(2) Sexual abuse in the third degree is a Class A misdemeanor."

address by [the aggravated murder statute] was the intentional, aggravated killing of another human being. The aggravating factors constitute no more than different theories under which murder becomes subject to the enhanced penalties for aggravated murder."

Similarly, the alternatives set out in the first paragraph of the first-degree sexual abuse statute, ORS 163.427(1)(a)(A) - (C) constitute no more than different theories under which the "basic offense" of second-degree sexual abuse (which, as noted, since has been amended and redesignated as third-degree sexual abuse) becomes the more serious offense of first-degree sexual abuse; they are not separately punishable offenses.

The state, however, argues that *Crotsley* compels a different conclusion in this case. In *Crotsley*, the defendant threatened a 14-year old girl with a knife and forced her to engage in sexual acts. 308 Or at 275. The defendant was charged with first-degree rape and first-degree sodomy because he used forcible compulsion. *Id.* The defendant also was charged with third-degree rape and third-degree sodomy because his victim was less than 16 years of age. *Id.* The defendant argued that his third-degree convictions should have merged with his first-degree convictions because the first- and third-degree charges were merely alternative charges for the same criminal acts. *Id.* The state argued that *former* ORS 161.062 (1985) (the precursor to ORS 161.067) authorized separate convictions and sentences for the first-degree and third-degree crimes. *Id.* at 276. This court agreed with the state.

In concluding that merger was not required, the court in *Crotsley* explained that the proponents of *former* ORS 161.062 (1985)

"clearly intended that criminal records accurately reflect all crimes actually committed and that a person who commits multiple crimes by the same conduct or during the same criminal episode should have a criminal record reflecting each crime committed rather than only a single conviction which would not accurately portray the nature and extent of that person's conduct."

*Id.* at 276-77. The court analyzed the rape statutes at issue in that case, ORS 163.375[8] (defining first-degree rape) and ORS 163.355[9] (defining third-degree rape). *Id.* at 278-80. ORS 163.375(1)(a), the court explained, was a "clear statutory prohibition against forcing sex on any female." *Id.* at 279. On the other hand, the third-degree rape statute, ORS 163.355, as well as the other variations of first-degree and second-degree rape, "are similar to each other in that they accord special protection to specified groups of females by making sexual intercourse with one of them a crime even with 'consent.' " *Id.* Therefore, the court held that the first- and third-degree rape statutes addressed a "separate and distinct legislative concern, and each alternative is a separate statutory 'provision' for purposes of ORS 161.062(1)." *Id.* The court applied the same reasoning to the first- and third-degree sodomy statutes, ORS 163.405 and ORS 163.385. *Id.* at 280. The court therefore concluded that the defendant had violated four separate statutory provisions and that the anti-merger statute applied. *Id.*

The state argues that the rape and sodomy statutes at issue in *Crotsley* are indistinguishable from the sexual abuse statute in this case and, therefore, *Crotsley* controls the outcome here. We disagree. *Crotsley* involved two different rape statutes that defined two different degrees of crime. Likewise, it involved two different sodomy statutes that defined two different degrees of crime. It is difficult to see how, when the legislature sets out the offenses in separate

---

[8] When *Crotsely* was decided, ORS 163.375 (1985) provided:

"(1) A person who has sexual intercourse with a female commits the crime of rape in the first degree if:

"(a) The female is subjected to forcible compulsion by the male; or

"(b) The female is under 12 years of age; or

"(c) The female is under 16 years of age and is the male's sister, of the whole or half blood, his daughter or his wife's daughter.

"(2) Rape in the first degree is a Class A felony."

[9] When *Crotsley* was decided, ORS 163.355 (1985) provided:

"(1) A male commits the crime of rape in the third degree if he has sexual intercourse with a female under 16 years of age.

"(2) Rape in the third degree is a Class C felony."

sections, defines them as different degrees of an incrementally graded offense, and assigns them different punishments, those can be anything other than separate provisions for purposes of the anti-merger statute.[10] *See White*, 346 Or at 294 (Kistler, J., concurring). But that is not what the legislature did here. This case involves only a single statute and a single first-degree crime. That structural aspect of the statute alone distinguishes *Crotsley* and renders it not controlling in this case. And, as we already have described, the structure of the sexual abuse statute, together with what the legislative history tells us about whether each degree of the offense was perceived as describing multiple offenses or multiple ways of committing a single offense, convinces us that the subparagraphs of the first-degree sexual abuse statute, ORS 163.427(1)(a)(A) - (C), are not separate provisions within the meaning of the anti-merger statute.

We conclude, therefore, that the legislature intended to create the single crime of first-degree sexual abuse. The presence of more than one of the elements that convert a lower degree of sexual abuse to first-degree sexual abuse does not convert defendant's single act into separate crimes. We agree with defendant that his six convictions should merge into three convictions: one conviction related to his touching of the victim's breast; a second conviction related to his touching of the victim's vagina; and a third conviction for his touching of the victim's buttocks.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

---

[10] We acknowledge that *Crotsley* contains an observation suggesting that the alternatives contained solely within the first-degree rape statute constituted "separate statutory provisions" under what is now ORS 160.067(1). After noting those alternative ways of committing first-degree rape, the court stated, "[E]ach statutory alternative addresses a separate and distinct legislative concern, and each alternative is a separate statutory 'provision' for purposes of ORS 161.062(1)." *Crotsley*, 308 Or at 279. Because the facts in *Crotsley* did not present an issue involving the alternative ways of committing first-degree rape, that discussion was not germane to the issue presented and is not binding.

**KISTLER, J.,** dissenting in part and concurring in part.

The trial court, sitting as the trier of fact, convicted defendant of kidnapping an 11-year-old girl and sexually abusing her. On review, the majority holds that the trial court erred in denying defendant's motion for judgment of acquittal because the evidence was not legally sufficient to prove one element of kidnapping. In moving for judgment of acquittal, however, defense counsel expressly gave up the issue on which the majority now relies to reverse his conviction. He told the trial court that, as the court knew, "that's not our issue." He explained that he was not arguing about specific crimes or their elements. And, consistently with that position, defendant moved for a judgment of acquittal on all the charges (not just kidnapping) because no reasonable juror could find that he was the perpetrator. I would hold that defense counsel gave up the issue that he now raises on review and would affirm defendant's kidnapping conviction. I respectfully dissent from that part of the majority's decision.[1]

In moving for a judgment of acquittal, defendant referred to and incorporated arguments that he had made in his opening statement. It is helpful, in my view, to describe those arguments briefly to put his motion for judgment of acquittal in context. The state charged defendant with kidnapping the victim, sexually abusing her, and unlawful sexual penetration. Throughout the trial, defendant raised one defense to all those charges: He was not the person who had committed those offenses. As defense counsel told the trial court in opening statement, the victim had told the police that the person who locked her in the room and assaulted her "was six-foot tall, really skinny, dark brown, almost black curly hair—long enough to pull it into a pony tail—big bones that stuck out—cheek bones and chin, and had brown eyes." Defense counsel explained in opening statement that not one of his client's physical attributes matched that description and that a photograph of his client at the time of the alleged

---

[1] The majority also holds that defendant's six convictions for sexual abuse gave rise to only three punishable offenses. I agree with the majority on that point for the reasons stated in *State v. White*, 346 Or 275, 211 P3d 248 (2009) (Kistler, J., concurring).

events would confirm that defendant was not and could not have been the person whom the victim had described to the police.

At the close of the state's case-in-chief, the prosecutor gave the trial court, who was sitting as the trier of fact, the citation to a Court of Appeals case that bore on the kidnapping charge. The prosecutor explained that "there's only one case in the State of Oregon with regard to Secreting Somebody in a Place Not Likely to be Found, and that is [*State v.*] *Montgomery*[, 50 Or App 381, 624 P2d 151 (1980), *rev den*, 290 Or 727 (1981)]." The court then recessed for lunch.

When court resumed, defense counsel moved for a judgment of acquittal. Counsel began by noting that the prosecutor had referred, before lunch, to *Montgomery*. Defense counsel told the trial court that, "although [he] would factually distinguish the present case from the *Montgomery* case" and explained his reasons for doing so, he was basing the motion for a judgment of acquittal on a different ground. Specifically, after discussing the issue in *Montgomery*, defense counsel told the trial court:

> "However, as the Court knows from the entire case from Opening Statement to now, that's not our issue. Our issue is not a nit-picking argument regarding specific elements and specific crimes. We're not arguing about venue. We're not arguing about intent. We're simply saying that there's insufficient evidence, as a whole, to—as a tr[i]er of fact— even in the light most favorable to the State, to believe that a tr[i]er of fact could beyond a reasonable doubt find that my client, Mr. Parkins, had anything to do with the alleged molestation that took place of [the victim], and I believe that even Detective Green, in his last answer before leaving the stand, said that the physical descriptions he received from [the victim], from [the victim's sister], and from a friend of Mr. Parkins, Nick Olney, did not match Mr. Parkins.
>
> "The Court has heard more than once from more than one source, the physical description of the alleged person that committed this crime, and they do not match Mr. Parkins, and we provided a photograph of Mr. Parkins that was near in time, at least, to the time that the State is

now alleging that this took place. And by no means does that match him in any respect, I would argue."

Defense counsel then raised a question regarding the victim's credibility and concluded, "[W]e are asking the Court to make a finding for Judgment of Acquittal."

The trial court ruled:

"That motion will be denied, and I do believe that there's sufficient evidence on the Kidnapping Count to support the allegations set forth in the Indictment, particularly the evidence that was brought up by the State, that there were attempts by [the victim] to seek help and to scream, but that the Defendant told her that nobody would hear and nobody would care. And, in light of that evidence, I believe that that charge is legally sound in this case."

The preservation issue in this case arises in somewhat of an unusual posture, and it is important to be clear about both the scope of defendant's motion for judgment of acquittal and the basis for that motion. Defendant did not limit his motion for judgment of acquittal to the kidnapping charge. Rather, as defense counsel told the trial court, "Our issue is not a nit-picking argument regarding * * * specific crimes." Consistently with that position, the sole basis that defense counsel advanced in support of the motion for judgment of acquittal was that no reasonable trier of fact could find that defendant was the person whom the victim had described to the police. That argument, if correct, would have entitled defendant to an acquittal on all the charges against him.

The trial court denied defendant's motion, presumably because the court concluded that there was sufficient evidence to find that defendant was the perpetrator. The court then went on to address an issue that defendant had explicitly given up—whether the evidence was sufficient for a trier of fact to find that the state had proved the elements of one of the crimes, kidnapping, with which defendant was charged.

On review, defendant abandons the issue that he raised in the trial court. He does not argue on review that the trial court should have entered a judgment of acquittal on all

the charges because no reasonable trier of fact could find that he was the person whom the victim described as the perpetrator. Rather, he argues that that no reasonable trier of fact could find that the state proved the element of kidnapping that the Court of Appeals had discussed in *Montgomery*.

Defense counsel, however, expressly gave up that issue in the trial court. After discussing the issue in *Montgomery*, defense counsel told the trial court "that's not our issue." If that statement were not clear enough, defense counsel added, "Our issue is not a nit-picking argument regarding specific elements and specific crimes." In my view, the only reasonable interpretation of those statements is that defendant was not directing his motion for a judgment of acquittal at kidnapping, nor was he arguing that the evidence was insufficient to prove the elements of kidnapping (or of any of the other charges for that matter). Rather, as defense counsel explained, his argument was directed to all the charges and was "simply" that no reasonable trier of fact could find that defendant matched the victim's description of the perpetrator.

Defendant argues on review that the issue regarding the kidnapping charge is preserved because the trial court was aware of that issue when it ruled on his motion for judgment of acquittal. Defendant notes that the prosecutor had provided the trial court with a citation to *Montgomery* before defendant moved for judgment of acquittal, that defense counsel later moved for a judgment of acquittal and distinguished *Montgomery*, and that the trial court expressly considered whether the evidence supported the elements of the kidnapping charge in denying his motion.

While true, defendant's argument on review fails to come to terms with a larger principle: A party may not expressly disclaim reliance on an issue before the trial court and then seek on appeal to reverse the trial court's ruling on the very issue that the party just disclaimed. This court has long recognized that, when a party "indicates" to the trial court that an issue or ruling is acceptable, that party may not challenge the ruling on appeal. *Clay/Luttrell v. Pay Less Drug Stores*, 276 Or 673, 676-77, 556 P2d 125 (1976). That is

true even when the trial court has considered the ruling, as in this case. *See id.*[2] Accordingly, I would hold that defendant's challenge to his kidnapping conviction is not properly before us and would affirm that conviction. Defendant's remedy on that issue should lie, if at all, in post-conviction.

As noted, for the reasons stated in the concurring opinion in *State v. White*, 346 Or 275, 211 P3d 248 (2009), I agree with the majority that the trial court erred in holding that the six counts of sexual abuse gave rise to six separately punishable offenses, and I join that part of its decision. Accordingly, I dissent in part and concur in part in the majority's decision.

---

[2] In *Clay/Luttrell*, the trial court told the parties that it was changing one of the instructions that it had planned to give, 276 Or at 675-76, which presumably means that the trial court had considered the change and determined that it was legally correct. One of the lawyers for the plaintiffs " 'indicated that the instruction, as changed was acceptable,' " but the plaintiffs later appealed challenging the instruction. *Id.* at 676. This court declined to consider the issue, describing it as invited error. *Id.* at 677.