Argued and submitted November 10, 1980, affirmed February 9, reconsideration denied March 19, petition for review allowed April 7, 1981 (290 Or 727)

# STATE OF OREGON, *Respondent,*

*v.*

# JESSE JAMES MONTGOMERY, *Appellant.*

## (No. 42401, CA 17484)

624 P2d 151

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J. PRO TEMPORE*

*Appointed to Supreme Court December 1, 1980.

## CAMPBELL, J. PRO TEMPORE

Defendant was indicted for kidnapping in the first degree, burglary in the first degree, assault in the fourth degree, and menacing. The jury found him guilty of assault in the fourth degree, menacing, and kidnapping in the second degree. He was additionally convicted of the lesser included offense of criminal trespass in the first degree. At sentencing, the trial court found that the criminal trespass, assault and menacing convictions all merged into the kidnapping conviction. The court then sentenced defendant to the legal and physical custody of the Corrections Division for a period not to exceed six years. On appeal, defendant contends that (1) his motion for acquittal on the kidnapping charge should have been granted, and (2) the trial court erred by entering a "civil" judgment against the defendant. We affirm.

On December 16, 1979, defendant's brother, Bobby Montgomery, had a fight with the victim, Earl Eberly, a 61-year-old man, in Eberly's apartment in Lincoln City. As he left defendant's apartment, Bobby said he would get help and come back. The victim was afraid and called the police. Before police arrived, defendant and his brother forced their way back into the victim's apartment and began to beat him.

After the assault began, defendant and his brother dragged the victim into the bedroom. Defendant's brother pulled all the curtains in the kitchen and shut the front door. The beating continued until the brother saw a police car in front of the apartment. Defendant and his brother then pulled the victim into the bathroom. Defendant's brother gave defendant a knife which defendant held to the victim's throat while the victim lay on the floor. Defendant's brother told defendant to cut the victim's throat if he made a sound.

Defendant shut the door to the bathroom and his brother went outside and talked to the police officers in the apartment parking lot. Defendant's brother told the police that the victim had left his apartment and gone to a tavern. While one officer talked to the brother, the other went to the apartment. The door was locked but the curtains into the living room were open. From this window the officer

could not see into the bedroom or bathroom areas. He shook the door and knocked but there was no response from within. After talking to Bobby Montgomery, the police officers returned to patrol.

The victim testified that Bobby then came back in and that Bobby and defendant continued to hit the victim. They next took the victim outside , demanded his car keys, took him to a neighboring apartment and shortly thereafter let him go, warning him not to call the police. Defendant was arrested about an hour and a half later. He ultimately admitted that he had held the victim while his brother beat him, that the victim had been held at knifepoint, and that the victim was locked in the bathroom of the apartment at one point.

The defendant was charged with kidnapping in the first degree by secretly confining the victim in a place where he was not likely to be found with intent to interfere substantially with his personal liberty and for the purpose of causing physical injury to the victim. *See* ORS 163.225(1), quoted below; ORS 163.235(1).[1] Defendant moved for a judgment of acquittal on the ground that the evidence was insufficient to support his conviction because a person is not secretly confined in a place where he is not likely to be found if he is confined in a room of his own apartment. Defendant further argues on appeal

---

[1] ORS 163.235(1) provides, in part:

"(1) A person commits the crime of kidnapping in the first degree if he violates ORS 163.225 with any of the following purposes:

" * * * * *

"(c) To cause physical injury to the victim; or

" * * * * *.

The indictment charged defendant of "KIDNAPPING IN THE FIRST DEGREE, committed as follows:

"The said defendant did unlawfully and knowingly without consent or legal authority secretly confine Earl Fuller Eberly in a place where he was not likely to be found with the intent to interfere substantially with Earl Fuller Eberly's personal liberty and with the purpose of causing physical injury to Earl Fuller Eberly * * *."

Although defendant was charged with kidnapping in the first degree, the judge instructed the jury on both first and second degree, and the jury only found defendant guilty of kidnapping in the second degree.

that the victim was restrained for too brief a period of time to justify a separate conviction for kidnapping. Additionally he contends that the detention was merely incidental to defendant's crimes of assault, criminal trespass and menacing and was not committed with a separate intent unrelated to those crimes.

■ ORS 163.225 provides:

"(1) A person commits the crime of kidnapping in the second degree if, when intent to interfere substantially with another's personal liberty, and without consent or legal authority, he:

"(a) Takes the person from one place to another, or

"(b) Secretly confines the person in a place where he is not likely to be found."

For the purpose of determining whether kidnapping is incidental to another crime, the critical factor is not actual substantial interference with a person's liberty but that the perpetrator have the *intent* to interfere substantially with the victim's liberty. *State v. Garcia,* 288 Or 413, 605 P2d 671 (1980); *State v. Dinkel,* 49 Or App 917, 621 P2d 626 (1980). Additionally, the malefactor must commit an act proscribed by ORS 163.225(a) or (b). *State v. Garcia, supra.*

■ Defendant challenges the sufficiency of evidence on the issue of intent by contending that his detention of the victim was merely incidental to his other crimes and was too brief to constitute "kidnapping." In promulgating ORS 163.225, the Criminal Law Revision Commission declined to set arbitrary time limits on an abduction before it can be considered a separate crime. *State v. Dinkel, supra,* slip opinion at 8. Thus, brevity of confinement is merely one factor to be considered by the jury in making the critical determination of whether the interference intended was substantial. *See State v. Dorsey,* 44 Or App 721, 724, 607 P2d 204 (1980).

■ We find that despite the fact that the victim was restrained for a brief period of time, evidence that the defendant concealed the victim in the bathroom, at knifepoint, and prevented the victim from responding to the police officer was sufficient to allow a rational factfinder to find that defendant intended to substantially interfere with the victim's personal liberty. *See State v. Garcia, supra* at 421.

■ Defendant's main challenge to the sufficiency of the evidence is on the issue of whether he committed an act proscribed by the statute. Defendant contends that because the victim was held in the bathroom of his own apartment he was not "secretly confine[d] * * * in a place where he [was] not likely to be found" as required under ORS 163.225(1)(b). While Oregon courts have had substantial opportunities to examine the asportation requirement of subsection (a), they have never considered the meaning of the language of subsection (b) at issue in this case. Legislative history reveals only that the Criminal Law Revision Commission considered the meaning of subsection (b) to be a question of fact for the jury. Minutes, June 17, 1969, Criminal Law Revision p. 6. Thus, this court's function on appeal is to determine whether there was sufficient evidence, viewed in the light most favorable to the prosecution, for a rational trier of fact to find that defendant "secretly confined" the victim in a place where he was "not likely to be found." *State v. Garcia, supra* at 421.

We believe there was sufficient evidence for the jury to conclude that defendant "secretly confined" the victim. Defendant clearly confined the victim by keeping him in the bathroom. And, using the ordinary definition of "secretly" as keeping something from knowledge or view, defendant and his brother made the place secret by locking the door, closing the curtains, holding the victim at knifepoint so that he was not able to respond to the officer's knocks, and telling the officers that the victim was not at home.

■ The more difficult question is whether a rational definition of "place * * * not likely to be found" admits an inclusion of the bathroom of a victim's own apartment. Defendant argues that the victim's bathroom was a place where the victim was *most* likely to be found. He believes that the statute envisions a kidnapper sequestering the victim in some hiding place, as for example, locking a victim in a closet of an abductor's apartment.

We think, however, that although a victim's own bathroom is not ordinarily a place where that person is not likely to be found, the room can be made into such a place by the efforts of the kidnapper. Here, defendant and his

brother made a calculated effort to insure that the police would not find the victim in his own apartment and they succeeded. Under these circumstances the jury was entitled to find that defendant confined the victim in a place where he was not likely to be found.

We therefore hold that the trial court did not err in denying defendant's motion for a judgment of acquittal on the kidnapping charge.

Defendant also contends that the trial court erred by imposing a "civil judgment" against the defendant and in favor of the victim and Lincoln County. The circuit court required defendant to pay sums to the victim for emergency medical expenses and the victim's expense associated with the prosecution of the case. The court further ordered that the defendant pay money to the county to reimburse the county for the costs of his criminal defense.

Despite any language that the court may have used in making its order, the court had statutory authority to require the defendant to pay restitution to the victim for any pecuniary damages resulting from the defendant's criminal activities. ORS 137.106(1). Further, the court had authority to require the defendant to pay costs resulting from expenses specially incurred by the state in prosecuting the defendant. ORS 161.665(1), (2). Reimbursement for attorney fees are costs which are assessable as part of the sentence. *State v. Fuller,* 12 Or App 152, 504 P2d 1393, rev. denied (1973), *aff'd sub nom* 417 US 40 (1974). Therefore, the court had the necessary statutory authority to require defendant to pay the amount imposed. The court's failure to identify the amounts in question as "costs" or as "restitution" or to identify the judgment as a criminal judgment is of no consequence.

Affirmed.