Argued and submitted March 19, 2010, reversed and remanded March 16, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVE DWAIN SIMMONS, JR.,
*Defendant-Appellant.*

Linn County Circuit Court
07061457; A137760

250 P3d 431

Erin K. Galli argued the cause for appellant. With her on the brief was Chilton & Galli, LLC.

Rene C. Holmes, Senior Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and David B. Thompson, Senior Assistant Attorney General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for third-degree assault, ORS 163.165, and raises two assignments of error. He first argues that the trial court erroneously admitted hearsay statements that the assault victim, who did not testify at trial, had made to a police officer immediately after the assault, which had identified defendant as one of the assailants. Defendant asserts that the victim's statements should not have been admitted because the state failed to establish that the victim was unavailable as a witness, and, therefore, admission of his statements violated defendant's right under Article I, section 11, of the Oregon Constitution to confront witnesses. The state counters that defendant's first assignment is not preserved and should not be considered on appeal. We conclude that defendant adequately preserved his first assignment of error and that the state failed to establish that the victim was unavailable as a witness under Article I, section 11. We also conclude that admission of the victim's hearsay statements prejudiced defendant, requiring that we reverse defendant's conviction and remand the case to the trial court. That conclusion renders defendant's second assignment of error pertaining to his sentence moot.

We review the facts of this case in the light most favorable to the state. *State v. Brown*, 310 Or 347, 350, 800 P2d 259 (1990). In June 2007, James, Monroy, and the victim went to a house in Albany. Several people were already in the house, including defendant and Turvey. At some point, a fight broke out in a bedroom, during which defendant struggled with and hit the victim. Of the people present at that time, three testified at trial about those events: Monroy, James, and Turvey.

Monroy testified that she saw defendant struggle with and hit the victim and later heard the victim yelling about being hit by someone. James remembered going into the home with the victim and entering a bedroom with him, where other people were present. James then left the bedroom, entered a bathroom, and closed its door. James did not recall the victim being attacked and, although he apparently

remembered the sound of voices while he was in the bathroom, he did not recall what was said or how loud the voices were. Turvey admitted that he had assaulted the victim that day.[1] He testified that he was the only assailant and that defendant was sleeping in another room during the assault.

Officer Tapper was dispatched to the area of the house in response to a report of a melee. When he arrived, Tapper saw the victim come out of the house staggering and waving his hands at Tapper. The victim "looked terrified" and was disoriented. Tapper saw that the victim had blood and "lumps and bumps all over his face" and "blood coming from an ear"; it was obvious to Tapper that the victim had recently been beaten. As will be explained below, the trial court allowed Tapper to testify about statements that the victim made to him during their initial encounter outside the house. Tapper testified that the victim said that defendant was crazy, that defendant and another man had attacked him, and that they were still in the house. A short time later, police officers entered the house and found several people, including defendant and Turvey.

During the second day of defendant's trial, the state informed the court, outside of the jury's presence, that the victim had failed to appear to testify. The state moved to admit the hearsay statements that the victim had made to Tapper. The state acknowledged that the victim had not been subpoenaed for trial, but it offered to present witnesses to testify about the admissibility of the victim's statements, "the efforts of the [s]tate to secure [the victim's] attendance," and the victim's "expressions of fear about coming here." When asked for his position on the state's request, defense counsel responded:

> "Well, Your Honor, I would not agree that this would fall under necessarily the excited utterance [exception]. It seems to me it would fall under Rule 804 about a declarant being unavailable or making himself unavailable.
>
> "* * * * *

---

[1] At the time of defendant's trial, Turvey was incarcerated after having been convicted of third-degree assault and coercion for his conduct during the incident.

"As far as [the victim] not being here, both sides actually had been in communication, and I would ask to be allowed to present my own witness who had been in communication with [the victim], who had indicated that he would not be here.

"[Court]: To rebut the reasons or the necessity of receiving the other evidence in lieu of his testimony?

"[Defense Counsel]: Yes. I'm sorry?

"[Court]: To show why the Court should not allow—

"[Defense Counsel]: Right. If there's testimony given that he's afraid to appear. I do see from the indictment that he appeared before the grand jury, and on a basic level I—*I do have a problem with any evidence regarding his prior statements being submitted. I do think that it does * * * violate both Article 1, Section 11[,] of the Oregon [C]onstitution* and the Sixth Amendment to the United States [C]onstitution, and I think that it totally flies in the face of *Crawford v. Washington* that we've all become accustomed to in the recent years."

(Emphasis added.)

The prosecutor explained that he had spoken with the victim by telephone the day before trial and, at that time, the victim had assured him that he would be present at trial the following day. The trial court responded:

"So you knew he wasn't where he was supposed to be [on the first day of trial]. So is law enforcement—have you asked law enforcement to assist in trying to find [the victim]?

"[Prosecutor]: I have. I have also talked to others, Your Honor, and those people are here to tell you about that."

The court then heard testimony from three witnesses, still outside of the jury's presence, about the state's efforts to obtain the victim's attendance at trial, which the state believed to be sufficient to establish that the victim was unavailable to testify at trial.

First, the court heard testimony from Houdek, an employee of the Linn County Sheriff's civil process office. Houdek testified that on September 5, 2007, she had received

a subpoena to be served on the victim requiring his appearance on November 14, 2007, to testify at defendant's trial. She learned that the victim was scheduled to appear in court on another matter on September 26. Houdek went to the courthouse on September 26 at the time that the victim was supposed to appear; however, the victim did not show up. She attempted to serve the subpoena on the victim a second time at a court appearance on November 5, but he again did not appear.

Second, the court heard testimony from the victim's attorney, Tibbets, who was representing the victim in a separate criminal matter. He confirmed that the victim had not appeared for the September 26 and November 5 court appearances. Tibbets also testified that he had received an unspecified number of telephone calls from the prosecutor starting in early October asking Tibbets to contact the victim and "put him in touch" with the prosecutor. Tibbets received another telephone call from the prosecutor on November 13, the day before defendant's trial, about his desire to communicate with the victim. As it turned out, Tibbets had not spoken with the victim in the week before defendant's trial.

Finally, the victim's stepmother testified. She stated that, although the victim had lived with her and the victim's father periodically over the past year, he had not been living at their home during the past month and had "mainly stay[ed] with his friends." However, she had seen the victim several times during the past month, including the day before trial. The victim told her at their last encounter that he knew about defendant's trial, and gave her the impression that he intended to appear at it. The stepmother also testified that she had received two telephone calls from the prosecutor. The first was the day before defendant's trial, and the second was the following day. When she saw the victim the day before defendant's trial, she relayed the prosecutor's message to him to call the district attorney's office.

The state then offered Tapper as a witness to describe the statements that the victim had made and the circumstances of those statements. After hearing Tapper's testimony, the court heard argument from counsel about the admissibility of the victim's statements. The state argued

that the statements were admissible as excited utterances under OEC 803(2) and that their admission would not violate defendant's confrontation right under Article I, section 11.[2] The following colloquy ensued regarding whether the state had established that the victim was unavailable, as relevant to the latter argument.

"[Prosecutor:] Now, in order for the Court to [admit Tapper's testimony under the excited utterance exception,] *the Court has to find as well that there would not be any violation to the defendant's confrontation rights under the Oregon [C]onstitution.* The evidence you've received establishes that. First of all[,] you've received evidence about the efforts—about the fact that [the victim] is absent from this trial, absent yesterday and absent today[;] *you've also received evidence about the efforts of the prosecution to obtain his attendance so that he could testify directly. These efforts have been reasonable, and, given the circumstances of this particular case and this particular person, the best that could be done to obtain his attendance at trial, therefore I'd ask that you find under the Evidence Code 804 that he is unavailable for purposes of the evidence rule under subsection (1)(e), as in Edward, that [he is] absent from the hearing, and the proponent of his statement, and that is the State, has been unable to procure his attendance by process or other reasonable means.*

"* * * * *

"[Court]: Alright. Let me ask [defense counsel] a couple of questions * * *. [Y]ou didn't address the question of unavailability. Are you contesting whether [the victim] is— and of course we know there's a special definition of 'unavailability,' it's not the common definition, but are you contesting [the] unavailability of [the victim]?

"[Defense Counsel]: Yes. It sounds to me like he—he knew about the trial, he's been—and I'm sorry, I wasn't prepared to address that right now and as I talk I'm flipping through for the—under—you're referring to under 804?

"[Court]: Yes, sir.

---

[2] Article I, section 11, of the Oregon Constitution provides, as relevant: "In all criminal prosecutions, the accused shall have the right * * * to meet the witnesses face to face[.]"

"[Defense Counsel]:   And *I don't think he falls under any of those definitions*. He's not—there's no lack of testimony—lack of memory, certainly[, OEC 804(1)(c)], it's not that he's unable to be present because of a death or then existing physical or mental illness[, OEC 804(1)(d)]. *He— the State has been able to procure his attendance in the past, certainly before the grand jury and certainly before this Court in another case, although admittedly he did fail to appear two times.* [OEC 804(1)(e).] He's not exempted by Court ruling. [OEC 804(1)(a).] Again, he's already testified to the grand jury[, OEC 804(1)(b)], so I would—and I remember *I originally contested the unavailability issue before, and I think that you would have to fall under Rule 804. I don't—I don't see that he has*."[3]

(Emphasis added.)

The court proceeded to rule that the victim's hearsay statements were admissible:

"[Court]:   * * * Going through the checklist, there's a specific mention in one of the cases you gave me that—one of the *Crawford* cases [where] the witness hadn't been subpoenaed for the trial, so being subpoenaed is not a magic touchstone on whether a witness is unavailable or not. It kind of comes up in 804[(1)](b). If you were looking at (1)(b), persists in refusing to testify despite an order of the Court to do so, not having a subpoena takes Mr.—basically takes [the state] out of (1)(b), which he would have had if he had a subpoena, but it doesn't mean that the witness isn't unavailable. So as to that first matter I am convinced based on

---

[3] As the colloquy between the trial court and counsel reveals, they were discussing whether the requirements for demonstrating the unavailability of a witness under OEC 804(1) had been satisfied in this case. That statute provides that a declarant is unavailable as a witness when the declarant:

"(a)  Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of a statement;

"(b)  Persists in refusing to testify concerning the subject matter of a statement despite an order of the court to do so;

"(c)  Testifies to a lack of memory of the subject matter of a statement;

"(d)  Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

"(e)  Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means."

OEC 804(1).

the testimony that I've already heard in this trial from the other witnesses, and I'm referring—you know, I can refer specifically to some things like Ms. Monroy, even though she was obviously a reluctant witness you might say. She described yelling and screaming and traumatic events that were occurring inside the house. That's—that comes into play a couple of times here not only in unavailability, why would he be unavailable, and there's testimony that—from one of the three witnesses [the state] called, [the victim's stepmother], that he expressed fear, and then we have, you know, Officer Tapper's testimony here outside the hearing of the jury that he was certainly terrified that day, [the victim] was, so I find unavailability.

"* * * * *

"* * * *Confrontation under [the] Oregon [C]onstitution, I've already covered the 804(1)(e), unavailability.* Then we get [to] indicia of reliability, and I've already kind of addressed that too. * * * [S]o under the Oregon [C]onstitution I—I think that the testimony does pass the confrontation clause rights of the defendant in this case[.]'"

(Emphasis added.) Based on that ruling, Tapper testified at trial about statements that the victim had made to him during their initial encounter.

■        On appeal, defendant argues that the trial court erred in admitting the victim's statements to Tapper. Specifically, defendant asserts that the admission of the hearsay statements violated Article I, section 11, because the state had failed to establish that it had made a good-faith effort to obtain the victim's attendance at trial and, thus, had failed to establish that the victim was unavailable as a witness.[4] The state counters that defendant's first assignment of error is unpreserved, asserting that defense counsel's argument to the trial court about whether the victim was unavailable under OEC 804(1) "did not in any way attack the state's OEC 804(1)(e) theory of unavailability. Instead, in arguing that [the victim] could not be deemed unavailable, defendant focused on subsections of that rule (*viz.,* OEC 804(1)(a) through (d)) that the state was not relying on to establish [the

---

[4] Defendant does not assign error to the trial court's determination that the victim's statements to Tapper qualified as excited utterances under OEC 803(2).

victim's] unavailability." Thus, according to the state, "defendant's theory on appeal for excluding the challenged hearsay is substantively different from the ones he presented to the trial court," and, therefore, it is not preserved for appeal.

We reject the state's preservation argument for two reasons. First, our review of the record establishes that defendant *did* address whether the state had established unavailability under OEC 804(1)(e). That is the only provision of the rule that conceivably could bear on the issue in this case, it is the provision to which the state's unavailability evidence was directed, and it is the provision on which the court relied to conclude that the state had established unavailability. Defendant, in turn, addressed each provision of OEC 804(1), including subsection (1)(e), and asserted that the state had not established unavailability under any of them. Hence, to the extent preservation turns on whether defendant contested unavailability under OEC 804(1)(e), defendant did.

Second, the correct focus in this case is on whether the state established that the victim was unavailable to testify as a witness for purposes Article I, section 11. As we will explain, defendant preserved his unavailability argument under that provision.

As noted, the trial court admitted the victim's hearsay statements under the "excited utterance" exception, OEC 803(2), to the general rule against the admission of hearsay.[5] The Oregon Evidence Code does not require that the declarant be unavailable in order for an excited utterance to be admitted as hearsay evidence. OEC 803; *State v. Moore*, 334 Or 328, 335, 49 P3d 785 (2002).

Nonetheless, in order to admit hearsay evidence under OEC 803 in a criminal case, the state must establish that the declarant is unavailable for purposes of Article I, section 11. *Moore*, 334 Or at 335. As the Oregon Supreme Court

---

[5] OEC 803(2) provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by OEC 802, the general rule against admission of hearsay evidence.

has recently confirmed, for hearsay statements by a declarant who does not testify at trial to be properly admitted, there are two requirements that must be met under Article I, section 11. "First, the declarant must be unavailable, and, second, the declarant's statements must have 'adequate indicia of reliability.'" *State v. Cook*, 340 Or 530, 540, 135 P3d 260 (2006) (quoting *Ohio v. Roberts*, 448 US 56, 66, 100 S Ct 2531, 65 L Ed 2d 597 (1980)).

With that framework in mind, we turn again to the state's preservation argument. The preservation requirement exists "not to promote form over substance," *Peeples v. Lampert*, 345 Or 209, 220, 191 P3d 637 (2008) (brackets in original omitted) (quoting *Shields v. Campbell*, 277 Or 71, 77-78, 559 P2d 1275 (1977)), but, rather, to promote three important policies: judicial economy, procedural fairness to the parties, and full development of the record. *Id.* at 219-20; *accord State v. Parkins*, 346 Or 333, 340, 211 P3d 262 (2009). Under the circumstances presented here, we conclude that those policies have been served. Although trial counsel and the court appear to have conflated the unavailability requirement under the Oregon Evidence Code and Article I, section 11, we are persuaded that the parties and the trial court were fully aware that the state was required to establish that the victim was unavailable under Article I, section 11, and that defendant sufficiently alerted the court to his argument that that standard had not been met.[6] In particular, our conclusion is guided by the Supreme Court's application of the preservation rule in *Parkins*, which posed a similarly postured dispute about whether the defendant had preserved an argument for appeal.

---

[6] We acknowledge that the parties' apparent conflation of the unavailability requirement under the Oregon Evidence Code and Article I, section 11, at trial is an understandable error given that the respective inquiries undoubtedly overlap to some degree and that their distinct contours have, at times, not been expressly recognized. *See, e.g., State v. George*, 146 Or App 449, 453 n 2, 934 P2d 474 (1997) ("'Unavailability' under OEC 804 is not necessarily the same as under the confrontation clauses of Article I, section 11, of the Oregon Constitution, or the Sixth Amendment to the United States Constitution."); *State v. Nielsen*, 316 Or 611, 623, 853 P2d 256 (1993) (citing OEC 804(1)(e) definition of unavailability as support for its conclusion that the state's efforts to obtain a declarant were satisfactory under Article I, section 11).

In *Parkins*, the defendant argued on appeal that "his kidnapping conviction should be overturned because the evidence failed to show that the victim was 'secretly confine[d] * * * in a place where [she was] not likely to be found.' ORS 163.225(1)(b)." 346 Or at 335 (alterations in original). The state contended, however, that the defendant had not preserved that specific challenge. At the close of the state's case at trial, the state alerted the court to *State v. Montgomery*, 50 Or App 381, 386-87, 624 P2d 151 (1981), and described that case as " 'an important case with regard to the kidnapping charge,' because that opinion analyzed the 'secretly confined' and 'place not likely to be found' elements of ORS 163.225(1)(b)." *Parkins*, 346 Or at 337. Subsequently, the defendant moved for a judgment of acquittal, and defense counsel briefly discussed and attempted to distinguish *Montgomery* from the defendant's case. However, defense counsel immediately followed that argument by asserting to the court, " '[T]hat's not our issue. Our issue is not a nit-picking argument regarding specific elements and specific crimes.' " *Parkins*, 346 Or at 338. Rather, the defendant clarified that "he was 'simply saying that there's insufficient evidence, as a whole' to conclude that [the] defendant committed any criminal acts as charged." *Id.*

Before the Supreme Court, the state argued that the trial court had not had an adequate opportunity to consider the argument that the defendant had raised on appeal because the defendant's statements after his discussion of *Montgomery* "steered the trial court away from the legal issue of whether the alleged conduct constituted 'secret confine[ment] * * * in a place where the person is not likely to be found,' as that phrase is used in ORS 163.225(1)(b)." *Parkins*, 346 Or at 338 (alterations in original). The Supreme Court disagreed with the state and concluded that the trial court appeared "to have understood the *Montgomery* issue to be in play." *Id.* at 340. Furthermore, after reviewing the principles behind the preservation rule, it concluded that

> "those policies are sufficiently served. The statutory issue that [the] defendant raises was presented to the trial court, even if [the] defendant addressed it ambivalently. And not only did the state have a meaningful opportunity to address the issue, it was the state that raised *Montgomery* before

the trial court. Finally, the trial court had an opportunity to resolve the issue, and the record suggests that the trial court in fact did so. To be sure, the issue could have been better preserved, but it was, we conclude, adequately preserved."

*Id.* at 341.

The parallels between the preservation issue in *Parkins* and in our case support our conclusion that defendant adequately preserved his first assignment of error. First, the issue whether the victim was unavailable as a witness under Article I, section 11, was squarely presented to the trial court. Although he could have done so more explicitly, defense counsel told the trial court that admission of the victim's hearsay statements would violate Article I, section 11, because the state had not satisfied the unavailability requirement. In particular, in rebutting the state's request that the court find "that there would not be any violation to the defendant's confrontation rights under the Oregon [C]onstitution," defense counsel engaged in a point-by-point analysis of all five subsections of OEC 804(1) and a summary argument that the victim was not unavailable as a witness "under any of those definitions." *See* 241 Or App at 445-46. Given that trial counsel and the court all appear to have understood the definition of unavailability under OEC 804(1)(e) to serve as a proxy for unavailability under Article I, section 11, we conclude that that argument, in conjunction with defense counsel's argument that admission of the victim's statements "does * * * violate * * * Article [I], [s]ection 11[,] of the Oregon Constitution," adequately informed the trial court that the state's efforts to obtain the victim's appearance at trial were insufficient and, thus, that the victim was not unavailable under Article I, section 11. *See* 241 Or App at 442-47.

Second, just as in *Parkins*, not only did the state have a meaningful opportunity to address whether the victim was unavailable under Article I, section 11, it was the state that specifically argued in support of its motion that "there would not be any violation to the defendant's confrontation rights under the Oregon [C]onstitution" because it had demonstrated that the victim was "unavailable for purposes of

* * * [OEC 804] subsection (1)(e) * * * and that * * * the State[ ] has been unable to procure his attendance by process or other reasonable means." Finally, the court here was given the opportunity to resolve whether the victim was unavailable under Article I, section 11, and it concluded that the victim was.[7]

The state presents an additional argument on defendant's first assignment of error, which we understand to be a further challenge to defendant's preservation of that assignment for appeal. The state maintains that "the trial court ultimately found that [the victim] was unavailable as a witness because he had concerns for his safety and was absent for that reason." The state argues that defendant has not challenged that reasoning on appeal, which it believes formed the basis for the trial court's conclusion that the victim was unavailable. Thus, the state urges that we affirm the admission of the victim's hearsay statements because "defendant fails to offer any legal analysis showing error in the unavailability ruling the trial court *actually* made." (Emphasis in original.)

We are not persuaded by that argument. The court did not offer that reasoning as an alternative basis for its decision on the victim's unavailability. *See Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 236, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005) ("[W]here plaintiffs fail to challenge the alternative basis of the trial court's ruling, we must affirm it."). Rather, in the context of concluding that the victim was unavailable, the court identified the victim's fear of testifying in defendant's trial as one possible explanation for why the victim did not appear at trial. Contrary to the state's assertions, defendant's challenge on appeal correctly focuses on whether the court erred in concluding that the victim was unavailable for purposes of Article I, section 11.

---

[7] *Cf. Bornhoft v. Aubry*, 178 Or App 625, 630-31, 37 P3d 1049, *rev den*, 334 Or 260 (2002) (concluding that appellants' argument that a deposition was admissible as an exception to the hearsay rule was not adequately preserved, in part, because "the trial court had no opportunity to explore or evaluate the factual predicate to appellants' arguments on appeal—that [the declarant] was unavailable for live testimony").

We turn to the merits of defendant's argument that the state failed to establish that the victim was unavailable as a witness. A declarant is "unavailable" under Article I, section 11, if the proponent of the declarant's hearsay statements made a good-faith but ultimately unsuccessful effort to obtain the declarant's testimony at trial. *State v. Nielsen*, 316 Or 611, 623, 853 P2d 256 (1993). "The degree of effort which constitutes due diligence in attempting to secure an unavailable witness depends upon the particular circumstances presented by each case." *State v. Anderson*, 42 Or App 29, 32, 599 P2d 1225, *rev den*, 288 Or 1 (1979). Even so, other cases addressing unavailability under Article I, section 11, help us assess the sufficiency of the state's efforts to obtain the victim's appearance at trial in this case.

In *Anderson*, we considered whether the state had made a good-faith effort to secure the appearance of several declarants at trial and had thereby established that they were unavailable to testify. 42 Or App at 31-32. We summarized the state's efforts to locate those witnesses as follows:

> "Charles Jackson * * * maintained several local addresses in the Grants Pass area. * * * A subpoena was taken to his last known address on two occasions[,] but he was no longer residing there. Several friends of his were contacted and they reported that they had not seen him for some time. Jackson had mentioned that he was leaving the area as he had been there long enough. The police were unable to locate a forwarding address for him.

> "The other three missing witnesses were traveling and living as a group. * * * The subpoenas for the second trial were taken to their last known address[,] but they were no longer living there. The sheriff's office then contacted the local post office and found that Marian Ferguson had a post office box there[,] but it had been inactive for several months. Another address was obtained from the post office[,] and an attempt was made to locate her through that address, to no avail. Sheriff's deputies spoke with other persons living in [their last known residence] and the surrounding area in an attempt to locate the witnesses. * * * The only lead the deputies uncovered was that the four witnesses reportedly had moved approximately two months earlier and had 'possibly gone someplace into the Los Angeles area.' * * * Follow-up contacts with people in the area

turned up nothing further. A call to the district attorney's office in Los Angeles was unproductive. Attempts to locate the witnesses continued to the day of trial."

*Id.* at 32-33. From that record, we concluded "that the state [had] made a proper showing of a good faith attempt to locate the missing witnesses." *Id.* at 34.

In *Nielsen*, the Supreme Court also had to determine whether a declarant was unavailable under Article I, section 11. The state's efforts to locate the declarant and obtain his attendance at trial included the following:

"[P]olice attempted to subpoena [the declarant] at her parents' home and at the second address that she had given to the arresting officer; they asked persons at those addresses for other leads and then tried to find [the declarant] at a third location that was suggested by residents at the second address; warrant checks, to see if [the declarant] had been arrested on any of several outstanding warrants against her, were conducted weekly through the police computer information system; and police made such a check on the morning of trial. There was no indication that police failed to follow up on any available lead concerning [the declarant's] whereabouts."

316 Or at 618-19. In light of those facts, the court concluded that "the state made a good-faith effort to obtain [the declarant's] testimony" and, accordingly, concluded that the declarant "was unavailable within the requirements of Article I, section 11." *Id.* at 623.

In contrast to *Anderson* and *Nielsen*, in *State v. Lucus*, 213 Or App 277, 279, 160 P3d 1012 (2007), we concluded that the state had failed to establish that the declarant was unavailable under Article I, section 11. The record in *Lucus* revealed the following:

"[T]he prosecutor indicated that a subpoena had been mailed to the [declarant's] residence, but she had not been personally served with a subpoena. The prosecutor also stated that he had spoken with a member of the [declarant's] family, who had at first indicated that the [declarant] would attend trial but later—a day or two before trial—had told the prosecutor that the [declarant] had left home, leaving a note saying that she was too frightened to testify and would be gone for a 'few days.' The family member did not

know where the [declarant] was. The state made no subsequent efforts to locate the [declarant]."

*Id.* at 278. On that record, we concluded that "the steps taken by the state to procure the attendance of the [declarant] at trial were insufficient." *Id.* at 279.

We conclude that the circumstances presented here are more similar to those in *Lucus*. Here, the state prepared a subpoena for the victim in early September; however, it made only a minimal effort to serve it on the victim. The sheriff's office attempted service only twice and, both of those times, it relied on the victim's expected attendance at two court appearances. There is no indication in the record that the state attempted to serve the subpoena at any other location or time.

Similarly, aside from making a few telephone calls to the victim's attorney, Tibbets, who was representing the victim in a criminal action adverse to the state, there is no indication in the record that the state made any effort prior to the day before trial to determine the victim's whereabouts. The record does not indicate that the police went to the victim's last known address or sought out family members or people with whom the victim had previously lived. Until the victim failed to attend the first day of defendant's trial, it does not appear that the state had asked law enforcement officers to assist it in finding the victim. In fact, it appears that the first time that the state contacted anyone other than Tibbets was on the day before defendant's trial, when the prosecutor contacted the victim's stepmother and later spoke with the victim on the telephone. In light of those circumstances and on this record, we conclude that the trial court erred in concluding that the victim was unavailable as a witness under Article I, section 11, and, therefore, erred in admitting the victim's hearsay statements.

That error is one that requires us to reverse defendant's conviction and remand the case to the trial court, *see* OEC 103, unless the error was harmless. The state does not argue that admission of the statements was harmless, and,

on this record, we conclude that the error in admitting them was not harmless.

Reversed and remanded.