STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERIC JAMES ARREOLA,
*Defendant-Appellant.*

Tillamook County Circuit Court
131085; A155818

386 P3d 214

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Dustin E. Buehler, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Susan G. Howe, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Wollheim, Senior Judge.

**TOOKEY, J.**

Defendant appeals a judgment of conviction for various crimes, assigning error to the trial court's denial of his motion for judgment of acquittal on Count 2, first-degree kidnapping, ORS 163.235, and Count 3, criminal conspiracy to commit first-degree kidnapping, ORS 161.450 and ORS 163.235. Defendant also assigns error to the trial court's nonunanimous verdict instruction.[1] For the reasons that follow, we reverse on Counts 2 and 3, remand for resentencing, and otherwise affirm.

We state the facts in the light most favorable to the state and review those facts to determine whether a rational trier of fact could have found defendant guilty beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

The relevant facts are undisputed. Defendant, LaBree, and NS lived in defendant's residence. They sold methamphetamine together. NS and defendant also sold heroin with Mendez. In May 2013, NS moved out of defendant's residence. Defendant, LaBree, and Mendez noticed that drugs and money were missing and believed that NS had stolen the drugs and money. Two weeks later, NS reached out to LaBree because she wanted to meet and talk. LaBree told defendant and Mendez that NS wanted to talk with her. Defendant, LaBree, and Mendez began angrily talking about how NS had stolen their money and drugs and how they wanted retaliation. After about an hour of planning, the three agreed that LaBree would pick up NS, bring her back to defendant's residence, and defendant and Mendez would confront NS. The goal was "to scare [NS], to make her realize what she had done."

When LaBree returned to defendant's residence with NS, they went into the garage and talked for 20 minutes before defendant and Mendez walked in. Defendant and Mendez began confronting NS, asking her where their

---

[1] We reject that assignment of error without discussion. *See State v. Bowen*, 215 Or App 199, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129, *rev den*, 345 Or 415 (2008), *cert den*, 558 US 815 (2009).

money was. NS was standing towards the front of the closed garage and could not exit the garage without going through Mendez and defendant. After about 10 minutes of yelling, Mendez approached NS with defendant standing behind her. Mendez took NS's purse and started going through the purse while asking NS where her money was. As Mendez removed the contents of NS's purse, defendant picked up a garbage can and started to throw it at NS, but then threw it against the garage door. Inside NS's purse, Mendez found a keychain containing mace and used the mace to spray NS in the face. NS started moving quickly towards the door when Mendez sprayed her with mace again, hitting NS's back and LaBree's face, throat, and chest. LaBree turned to walk into the house, and Mendez swung at NS's face, hitting her. As NS put her arms up to block Mendez, Mendez pushed NS against the wall and began kicking and hitting her. As Mendez was hitting NS, defendant stood behind Mendez, "egging [Mendez] on." LaBree walked into the residence to get water and a rag to wash off the mace. After about five minutes, NS rushed in from the garage towards the front door. NS was crying, and her face was red. Defendant went into the house, opened the front door, and told NS to get out. The assault lasted approximately 15 minutes.

Defendant was charged with two counts of first-degree kidnapping, criminal conspiracy to commit first-degree kidnapping, and various drug-related offenses. At the close of the state's case, defendant moved for judgment of acquittal on the first-degree kidnapping and criminal conspiracy to commit first-degree kidnapping charges. Defense counsel argued that the state failed to prove that defendant intended to substantially interfere with NS's liberty and contended that any interference was merely incidental to the assault. Defense counsel also argued that there was insufficient evidence to prove that defendant intended to terrorize NS. The trial court denied defendant's motion for judgment of acquittal. The jury found defendant guilty of one count of first-degree kidnapping, criminal conspiracy to commit first-degree kidnapping, and the drug-related charges. At sentencing, the trial court merged the first-degree kidnapping and conspiracy to commit first-degree kidnapping verdicts into a single conviction.

On appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal on Count 2, first-degree kidnapping, and Count 3, criminal conspiracy to commit first-degree kidnapping, because the state failed to prove that defendant intended to substantially interfere with NS's liberty and that defendant secretly confined NS in a place where she was not likely to be found. The state contends that the trial court did not err in denying defendant's motion for judgment of acquittal, because the evidence, considered as a whole, demonstrated that defendant primarily intended to substantially interfere with NS's movements by confining her to his garage and any assault was incidental to the confinement.

We first address the issues related to first-degree kidnapping. "A defendant commits the offense of kidnapping in the first degree if the state proves the elements required for kidnapping in the second degree and also proves that the defendant acted with additional malevolent purpose specified in ORS 163.235." *State v. Sierra*, 349 Or 506, 518, 254 P3d 149 (2010), *modified on recons*, 349 Or 604, 247 P3d 759, (2011) (footnote omitted). ORS 163.235 provides:

"(1)   A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"* * * * *

"(d)   To terrorize the victim or another person[.]"

ORS 163.225, the statute incorporated by reference above, sets out the elements of second-degree kidnapping. As pertinent to this case, that statute provides as follows:

"(1)   A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"* * * * *

"(b)   Secretly confines the person in a place where the person is not likely to be found."

Accordingly, in this case, to prove the charge of first-degree kidnapping, the state was required to prove

that defendant, (1) with intent to substantially interfere with NS's personal liberty, (2) secretly confined NS in a place where she was not likely to be found, (3) without consent or legal authority, and (4) with the purpose of terrorizing her. *See State v. Walch*, 346 Or 463, 468, 213 P3d 1201 (2009) (listing essential elements of first-degree kidnapping).

The controlling issue in this case is whether a rational trier of fact could conclude that defendant intended to substantially interfere with NS's personal liberty. The Oregon Supreme Court examined the legislative history of the kidnapping statutes in *State v. Garcia*, 288 Or 413, 605 P2d 671 (1980), and "determined that the legislative intent was that 'there be no conviction of the defendant for the separate crime of kidnapping *where the detention or asportation of the victim is merely incidental to the accomplishment of another crime * * *.*'" *State v. Mejia*, 348 Or 1, 8, 227 P3d 1139 (2010) (quoting *Garcia*, 288 Or at 420 (emphasis and omission in *Mejia*)). In *Garcia*, the court concluded that, in enacting the kidnapping statutes, the legislature intended that there "be a separate conviction and sentence for kidnapping only when it is not incidental to another crime, and it may be found not to be incidental if the defendant had the *intent* to interfere substantially with the victim's personal liberty." 288 Or at 423 (emphasis added). "In other words, the legislature adopted the requirement that a defendant intend to substantially interfere with a victim's personal liberty in order to distinguish kidnapping from incidental conduct that might accompany some other crime." *Mejia*, 348 Or at 8 (citations omitted).

> "As finally enacted the [kidnapping] law does not even require that there actually be a substantial interference with the victim's personal liberty; it is only necessary that the perpetrator have the '*intent* to interfere substantially' with the victim's personal liberty to make the malefactor guilty of kidnapping * * *."

*Garcia*, 288 Or at 421 (emphasis in original). The court later explained that, in regards to a defendant's intent to substantially interfere with another's personal liberty, "the liberty interest that [ORS 163.225] protects from interference is the interest in freedom of movement and * * * in order for

the interference to be substantial, a defendant must intend either to move the victim a 'substantial distance' or to confine the victim for a 'substantial period of time.'" *State v. Wolleat*, 338 Or 469, 475, 111 P3d 1131 (2005). However,

> "[i]n promulgating ORS 163.225, the Criminal Law Revision Commission declined to set arbitrary time limits on an abduction before it can be considered a separate crime. Thus, brevity of confinement is merely one factor to be considered by the jury in making the critical determination of whether the interference intended was substantial."

*State v. Montgomery*, 50 Or App 381, 385, 624 P2d 151, *rev den*, 290 Or 727 (1981) (citations omitted). We have previously stated that, in determining a defendant's intent, "proof that a defendant physically restrained the victim, thwarted escape attempts, sought to minimize the risk of discovery, or moved the victim to a place that would better facilitate the defendant's control over the victim, is probative of intent to substantially interfere with a victim's freedom of movement." *State v. Worth*, 274 Or App 1, 12, 360 P3d 536 (2015), *rev den*, 359 Or 667 (2016); *see Mejia*, 348 Or at 11 (holding that there was evidence that the defendant intended to interfere substantially with the victim's personal liberty where the defendant reversed the victim's direction of movement, took the victim's cell phone, covered the victim's mouth to silence her, and prevented the victim from escaping by pulling her away from the window). Thus, here, in determining whether defendant intended to substantially interfere with another's personal liberty, the question is whether defendant intended to confine NS for a substantial period of time.

We conclude that, in this case, there was legally insufficient evidence for a rational trier of fact to conclude that defendant intended to substantially interfere with NS's personal liberty. Evidence presented at trial demonstrated that defendant, Mendez, and LaBree planned to confront NS about the missing money and drugs. LaBree testified that the goal of the confrontation was to scare NS. While in the garage, NS was prevented from leaving for 15 minutes; however, the record demonstrates that that confinement was incidental to the assault. Other than the assault,

no evidence was presented to demonstrate that defendant, Mendez, or LaBree intended to confine NS to the garage for a substantial period of time. The state did not present evidence suggesting that defendant restrained NS, thwarted her escape attempts beyond "egging on" the assault, or sought to minimize the risk of NS's discovery. Indeed, after the assault, defendant opened the door and demanded that NS leave. Thus, the evidence presented was legally insufficient to demonstrate that defendant intended to substantially interfere with NS's personal liberty. Because there was legally insufficient evidence to find that defendant intended to substantially interfere with NS's personal liberty, a rational factfinder could not have found defendant guilty of second-degree kidnapping, a requisite to proving first-degree kidnapping, beyond a reasonable doubt.[2]

Second, as to the charge of criminal conspiracy to commit first-degree kidnapping, pursuant to ORS 161.450,[3] the state was required to prove that defendant agreed with another to commit the offense of kidnapping. As mentioned, the plan between defendant, LaBree, and Mendez revolved around confronting NS about the missing drugs and money. The state did not present evidence suggesting that there was an agreement to confine NS or restrain her until defendant, LaBree, and Mendez recovered the money and drugs. Rather, the plan was to confront and scare NS. Absent legally sufficient evidence that defendant agreed with LaBree or Mendez to substantially interfere with NS's personal liberty, a rational factfinder could not conclude that defendant committed criminal conspiracy to commit first-degree kidnapping beyond a reasonable doubt.

Therefore, the trial court erred in denying defendant's motion for judgment of acquittal on the charges of first-degree kidnapping and criminal conspiracy to commit first-degree kidnapping.

---

[2] Because we conclude that defendant did not intend to substantially interfere with NS's personal liberty, we need not address whether defendant secretly confined NS in a place where she was not likely to be found.

[3] ORS 161.450 provides, in part, "(1) A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, the person agrees with one or more persons to engage in or cause the performance of such conduct."

Reversed on Counts 2 and 3; remanded for resentencing; otherwise affirmed.