Argued and submitted September 18, 2018, affirmed April 8, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KYLE ALLAN BELDEN,
aka Kyle Allan Beldan,
*Defendant-Appellant.*

Multnomah County Circuit Court
16CR55568; A163905

464 P3d 465

Defendant appeals a judgment of conviction for fourth-degree assault constituting domestic violence. The state attempted to contact the victim more than a dozen times to secure her testimony at trial, but she did not appear. The trial court concluded that the victim was unavailable, and it admitted certain incriminating statements that she had made to another witness. Defendant assigns error to the trial court's admission of those statements, arguing that the state failed to demonstrate that the victim was "unavailable" to testify. Because of that failure, he argues, admitting the victim's statements violated his constitutional confrontation rights. *Held*: The trial court did not err. Given the victim's evasiveness and the state's diligence in response to that evasiveness, the state exhausted all reasonable means of securing the victim's testimony. Accordingly, the victim was unavailable, and the admission of her statements did not violate defendant's confrontation rights.

Affirmed.

Stephen K. Bushong, Judge.

John Evans, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Egan, Chief Judge, and Mooney, Judge.*

MOONEY, J.

Affirmed.

_____
* Egan, C. J., *vice* Hadlock, J. pro tempore; Mooney, J., *vice* DeHoog, J.

## MOONEY, J.

Defendant was convicted of fourth-degree assault constituting domestic violence. ORS 163.160; ORS 132.586. The case was tried to a jury, and defendant appeals from the judgment of conviction entered after receipt of the guilty verdict. The issue is whether defendant's state constitutional right to confront his accuser (Article I, section 11, of the Oregon Constitution) was violated when the victim's incriminating out-of-court statements[1] were admitted at his jury trial.[2] The questions before us are (1) whether the state exhausted reasonable means to secure the victim's attendance at trial and (2) whether defendant's objection to a late start on the scheduled trial date to allow the state to secure the victim's attendance precludes him from challenging the admissibility of the statements. We conclude that the trial court did not err in admitting the hearsay statements, and we therefore affirm.

The relevant facts are not in dispute. Laharty, a passerby, heard someone screaming for help when she was walking in front of defendant's house. When Laharty saw the victim, C, in the doorway of the house, she asked C if she had screamed. C responded, "yes, I did." Laharty approached C, who was "naked and shaking," and observed that C had a bloody lip and "big marks" on her body, "like somebody had been hitting on her." Laharty asked C if someone "beat [her] up," and C responded "yes." When Laharty asked who hurt her, C stated, "he's hiding in my daughter's bedroom." Laharty attempted to have C leave the house and call 9-1-1, but she refused because she was "afraid" to "lose her house." Due to C's screams, someone else had already called the police. When the police arrived, they found defendant and C, and asked defendant several questions about the incident. C refused to speak with the police. After conducting their interview, the police arrested defendant. He was charged with fourth-degree assault, which the state alleged

---

[1] The statements include that (1) the victim, C, identified herself as the person who called for help, (2) C had been assaulted and that her attacker was in her daughter's bedroom, and (3) C did not want the police involved because she was afraid to lose her housing.

[2] We address defendant's first three assignments of error only. We reject without discussion defendant's unrelated fourth assignment of error.

constituted domestic violence because he cohabitated with
C.

Between August 2016 and defendant's trial date of
November 14, 2016, the district attorney's office attempted
to contact C at least 13 times, including by phone and in
person. Some of those attempts resulted in actual contact or
discussion with the victim and, in at least one such contact,
the victim said she would attend trial if necessary. Although
the victim avoided at least one service attempt, the state
successfully served her with a subpoena before the trial
date.

C did not appear at the courthouse on the morning
of trial. At that point, the state sought a pretrial determina-
tion that C was unavailable for purposes of Article I, section
11, and a ruling that C's out-of-court statements could be
admitted through Laharty in lieu of C's live testimony. The
trial court ruled that, although the statements were offered
to prove the truth of the matter asserted, they were not sub-
ject to exclusion by the hearsay rule because they were indis-
putably excited utterances under OEC 803(2). Nevertheless,
defendant objected to the statements under Article I, section
11, on the ground that he has a right to face such a witness
"face-to-face." He argued that the state had not used suffi-
cient efforts to obtain C's in-person testimony and that, as a
result, the statements should be excluded. The state argued
that it was necessary to admit the out-of-court statements
through Laharty because, despite sufficient efforts on its
part, it had not been able to secure C's live testimony. In
its view, C was unavailable to testify as a witness and the
statements should come in. The trial court heard Laharty's
proffered testimony and considered the arguments from
both parties.

Defendant argued that the state had not estab-
lished C's unavailability, because it had not shown that it
exhausted all reasonably available means to secure C's live
testimony. Specifically, he argued that the state should have
(1) asked C's probation officer to convince C to appear at
trial and (2) initiated a contempt proceeding against C. In
response to that argument, the court asked defendant:

> "So should I grant [the state] a continuance and have them send an officer out and see if they can round her up and bring her in and we can start this trial at 1:30?"

Defendant objected, stating:

> "[T]his is the date and time for trial. This is the date and time. The State was aware that—in fact, I believe, based upon the procedural posture of this case, this case *** was initially set for trial on November 7 and *** we were set over because the State needed more time."

The state did not request or agree to a continuance, instead arguing that it had already exhausted all reasonably available means to secure C's appearance.

Finding that the state's efforts were similar to those in *State v. Starr*, 269 Or App 97, 344 P3d 100, *rev den*, 357 Or 415 (2015), the trial court concluded that the state's efforts were reasonable, that C was unavailable, and that the out-of-court statements were admissible through Laharty without violating Article I, section 11. The court explained:

> "[T]here were a number of efforts made by the State to try to get the witness to appear, including sending someone to her house on the morning of trial and the witness had already told the—the District Attorney's Office, the victim's rights advocate, that she *** did not want to be contacted by them anymore.
>
> "She did not want to participate in this process and was not cooperative. And although she may not have stated expressly that she was not coming to trial, the logical conclusion from that and from her failure to return phone calls, failure to respond to inquiries and failure to respond when the State sent someone to her door this morning, is—the only logical inference from that is that she is not cooperating and refusing to come to testify at trial."

At trial, Laharty testified to the hearsay statements, and the state presented the remainder of its evidence. Defendant was convicted of fourth-degree assault constituting domestic violence. He now appeals, assigning error to the trial court's admission of C's statements to Laharty, arguing that the admission of those statements violated his constitutional right to meet the witness face-to-face.

Under Article I, section 11, a defendant has the right to "meet the witnesses face to face" in criminal cases. Oregon's confrontation clause is similar to the confrontation clause in the Sixth Amendment to the United States Constitution, and Oregon courts have relied upon Sixth Amendment cases to interpret Article I, section 11. In *State v. Campbell*, 299 Or 633, 651-52, 705 P2d 694 (1985), the Supreme Court adopted the two-part test for the admissibility of hearsay testimony over confrontation-rights objections articulated by the United States Supreme Court in *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980). The *Roberts* two-part test is that (1) the declarant must be unavailable and (2) the out-of-court statements must have "adequate indicia of reliability." *Id.* at 66.

The United States Supreme Court has since held that, for purposes of testimonial out-of-court statements, the *Roberts* reliability test is insufficient and is barred by the federal Confrontation Clause unless the declarant is unavailable and the defendant had prior opportunity to cross-examine the declarant, regardless of whether the statement is deemed reliable by the court. *Crawford v. Washington*, 541 US 36, 50, 124 S Ct 1354, 158 L Ed 2d 177 (2004). Oregon courts continue to adhere to the *Roberts* analysis in interpreting and applying the confrontation guarantee of Article I, section 11, and requiring the state to establish unavailability and reliability. *State v. Harris*, 362 Or 55, 65, 404 P3d 926 (2017).

The right to "meet witnesses face to face" provides "the trier of fact [with] a satisfactory basis for evaluating the truth of the prior [out of court] statement." *California v. Green*, 399 US 149, 161, 90 S Ct 1930, 26 L Ed 2d 489 (1970). The right generally manifests itself by allowing criminal defendants to test the reliability of an accuser's statements "in the crucible of cross-examination." *Crawford*, 541 US at 61. Thus, confrontation—including its key cross-examination aspects—may be dispensed with only when the declarant is unavailable to testify personally and only where there are adequate indications of reliability with respect to those statements. Necessity justifies admitting hearsay against a criminal defendant once confrontation becomes impossible and reliability is established. *Harris*,

362 Or at 65. Defendant does not dispute the trial court's determination that C's statements were "excited utterances" under OEC 803(2)—making them sufficiently "reliable"— and we, therefore, confine our review to whether the state adequately demonstrated that C was unavailable to testify at trial.

We "view the record in the manner most consistent with the [trial court's] ruling, accepting reasonable inferences and reasonable credibility choices that the court could have made in support of its ruling." *State v. Nielsen*, 316 Or 611, 618, 853 P2d 256 (1993). Reliance by the state on out-of-court statements in lieu of live testimony is only permitted when offered out of necessity, *id.* at 623, that is, after the state has "exhausted all reasonably available means of producing the witness," *Harris*, 362 Or at 66. The state bears the burden to establish unavailability of the witness. *Id.* We review the reasonableness of the state's efforts in each case, taking into consideration the witness's evasiveness and the state's diligence to secure the witness in response to that evasiveness. *Id.* at 67; *see also Starr*, 269 Or App at 105-06 (considering the state's diligent efforts to reach a witness who "did not wish to be found"); *Nielsen*, 316 Or at 619 (considering the state's efforts to "follow up" on all available leads); *State v. Anderson*, 42 Or App 29, 33, 599 P2d 1225, *rev den*, 288 Or 1 (1979), *cert den*, 446 US 920 (1980) (considering the transient nature of the witnesses and their reluctance to deal with authorities).

Several cases guide our analysis. First, in *Anderson*, the state attempted to contact four witnesses who maintained various local addresses and a semipermanent residence out of town, who often left no forwarding address and "were reluctant to deal with the authorities[.]" 42 Or App at 32-33. The district attorney's office spent nearly four months before trial attempting to locate the witnesses. *Id.* at 33 n 1. It sent sheriff's deputies out to last known addresses with subpoenas. When they were unable to locate the witnesses, they spoke with people living near those addresses. *Id.* at 32. When the district attorney's office discovered that one witness had moved "back east" and the others had moved "into the Los Angeles area," it made further attempts to locate them by contacting law enforcement officers and following

up on other leads in those jurisdictions, but its efforts were unsuccessful. *Id.* at 33. We concluded that the state had not "acted with casual indifference, *** waited until the last minute to begin the search [for the witnesses,] *** or made a half-hearted or perfunctory attempt" to find them. *Id.* at 34 (citations omitted). Rather, the state "made a proper showing of a good faith attempt" to secure the witnesses' live testimony, and it had reached a "dead end." We, therefore, concluded that its efforts were reasonable. *Id.* at 34-35.

Likewise, in *Starr*, the victim in a domestic violence case was "prone to impermanency" and difficult to find. *Starr*, 269 Or App at 105. The state attempted to contact her several times in the months before trial, and it attempted to subpoena her at her last known address. *Id.* The state telephoned the victim, spoke with her relatives, and offered to pay for her travel and hotel accommodations during trial. *Id.* at 106. Despite those efforts, the victim did not appear. *Id.* The trial court admitted the victim's out-of-court statements through the testimony of the responding officers. *Id.* at 99. The defendant was thereafter convicted. *Id.* at 98. On appeal, we affirmed, concluding that the state had made reasonable efforts to secure the witness's testimony and that she was unavailable for purposes of Article I, section 11. *Id.* at 111.

Conversely, in *State v. Simmons*, 241 Or App 439, 250 P3d 431 (2011), the state made minimal efforts to serve the witness with a subpoena, it did not use law enforcement to try to locate the witness, and it made only "a few" telephone calls to the witness's attorney. *Id.* at 455. The state first spoke with the witness's stepmother the day before trial and it spoke later that day with the witness by phone. *Id.* The trial court admitted the hearsay statements and the defendant was convicted. *Id.* On appeal, we concluded that the state's efforts were insufficient under Article I, section 11, and we reversed. *Id.* at 455-56.

In *Harris,* the Supreme Court held that (1) serving a subpoena alone would not be sufficient to establish that the state exhausted all reasonable efforts to ensure a witness's appearance at trial, but that, in that case,

(2) the defendant invited error when he objected to a one-day set-over to allow the state to secure the subject witness's live testimony. *Harris*, 362 Or at 67. This case is different from *Harris*, in part because, in *Harris*, the state agreed to the court's suggestion of a set-over to allow it to secure the witness's live testimony. *Id.* In the case before us, neither the state nor defendant agreed to the court's suggested set-over. And, as discussed below, this case is also different from *Harris* with respect to the overall efforts of the state to secure the witness's testimony.

Defendant argues that the trial court erred in its reasonable efforts determination because the state did not exhaust all reasonable efforts to produce C. Again, defendant specifically argues that reasonable efforts would have included (1) asking C's probation officer to convince C to appear at trial and (2) initiating a contempt proceeding against C. The state, on the other hand, argues that, under *Harris*, defendant invited any error that may have resulted when he objected to a short set-over and that, in any event, the state's efforts were sufficient. As an initial matter, we reject the state's "invited error" argument. In this case, unlike in *Harris*, the state did *not* agree to the court's suggestion of a set-over to allow it to secure the witness's live testimony, contending instead that it had already exhausted all reasonable efforts to secure C's appearance. In those circumstances—that is, when the state agrees that a set-over is not needed—a defendant cannot be said to invite the error by also refusing to acquiesce to something that the prosecution itself agrees would not be useful. We do conclude, however, that the state exhausted all reasonable efforts to secure the victim's live testimony.

We turn briefly to the Supreme Court's recent decision addressing witness unavailability under OEC 804, *State v. Iseli*, 366 Or 151, 458 P3d 653 (2020). That case did not involve the constitutional right of a criminal defendant to face witnesses and the *Iseli* court expressly declined to "delve into constitutional questions." *Id.* at 169 n 10. Instead it focused on the statutory question before it, determined that the state had not sufficiently established unavailability of the declarant under OEC 804, and concluded that the

hearsay exception did not apply. *Id.* at 174-75. The state-ments were thus excluded as hearsay and the constitutional question concerning unavailability never arose. *Id.* at 175.

Unlike *Iseli*, the out-of-court statements before us qualify as "excited utterances" under OEC 803 and are not excluded as hearsay. Excited utterances, by their nature, are deemed inherently reliable and witness unavailabil-ity is not relevant to the inquiry under the evidence code. Here, defendant objects to the out-of-court statements being admitted through someone other than C, arguing that to allow the second-hand testimony would violate his state constitutional right to meet the witness face-to-face. And, so, the question of witness unavailability in this case is con-stitutional, rather than statutory, as in *Iseli*. What is needed to establish unavailability to overcome a hearsay objection under the evidence code and what is needed to establish unavailability to overcome an Article I, section 11, objec-tion is not necessarily the same. Whether—and how—those assessments might compare is no more a question before us than it was before the Supreme Court in *Iseli*.

Turning back to the reasonableness of the state's efforts, defendant argues that the state should have sought enforcement of its subpoena through a contempt proceeding. However, the state could not have initiated such a proceed-ing until *after* C failed to comply with the subpoena, at a point after trial commenced. The court's analysis of whether the absent witness was "unavailable" necessarily could only have included the state's *pretrial* efforts. Arguing that *post-objection* remedial steps might have been taken misses the point altogether and is incorrect.

Defendant next argues that the state should have engaged C's probation officer to assist it in gaining her compliance with the subpoena. The state was required to exhaust "all reasonably available means of producing" C to testify at trial. *Harris*, 362 Or at 66. We note first that the state did, in fact, contact C's probation officer to discuss the need for C's testimony. When considered along with all of the state's other attempts at contact, we conclude that the state exhausted all reasonably available means in this case.

Although the state had reason to believe that C would not appear on the morning of trial, its efforts were significantly more exhaustive than those described in *Harris*. The record reflects multiple attempts—some successful—through several individuals in the district attorney's office to contact C in the months before trial. It continued to attempt contact even after C repeatedly said that she did not want to testify or speak with them, and after she twice attempted to evade service of the subpoena. A representative of the district attorney's office spoke with C's probation officer about C's testimony and the need for her cooperation. And, on the morning of trial, when the district attorney's office sent a representative to see whether C would testify, she was not home. The state did not "act[] with casual indifference, * * * wait[] until the last minute to begin the search [for C], * * * or ma[ke] a half-hearted perfunctory attempt" to produce C's testimony. *Anderson*, 42 Or App at 34 (citations omitted).

Here, the state made repeated and otherwise reasonable efforts to produce C as a witness at trial, C repeatedly took steps to avoid testifying, and C was the victim in this domestic violence case. The state was not required to contact C's probation officer again. Its efforts were reasonable and reflected an overall approach, carried out in good faith, to secure C's live testimony. Nothing more was required. The court did not err when it admitted C's hearsay statements.

Affirmed.